[Cite as *Akron v. Ohio Dept. of Ins.*, 2014-Ohio-96.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

City of Akron,                                    :

      Appellant-Appellee,                    :

v.                                               :                    Nos.   13AP-473
                                                                      and    13AP-486
                                                 :              (C.P.C. No. 10CVF-08-11258)

Ohio Department of Insurance et al.,             :

                                                 :                 (REGULAR CALENDAR)

      Appellees-Appellants,                  :

[Timothy Metcalf & William Biasella,             :

      Appellees-Appellants].                 :


                                                 :

Ohio Police & Fire Pension Fund,                 :

      Appellee-Appellee,                     :

                                                 :                    Nos.   13AP-483
v.                                                                    and    13AP-496
                                                 :              (C.P.C. No. 10CVF-08-11426)

Ohio Department of Insurance et al.,             :

      Appellees-Appellants.                  :                 (REGULAR CALENDAR)

                                                 :


                                                 :

Medical Mutual of Ohio,                          :

      Appellant-Appellee,                    :

                                                 :
v.                                                                   Nos.   13AP-484
                                                 :                   and    13AP-495
Ohio Department of Insurance et al.,                           (C.P.C. No. 10CVF-08-11513)

                                                 :
      Appellants-Appellants,                              (REGULAR CALENDAR)

                                                 :
[Timothy Metcalf & William Biasella,

                                                 :
      Appellants-Appellants.]

                                                 :

D E C I S I O N

**Rendered on January 14, 2014**

*Roetzel Andress, LPA*, *Paul L. Jackson*, and *Karen D. Adinolfi*; *Cheri B. Cunningham*, Director of Law, and *Tammy Kalail*, for City of Akron.

*Michael DeWine*, Attorney General, and *W. Scott Myers*, for Ohio Department of Insurance.

*Larry D. Shenise*, and *Joel D. Reed*, for Timothy Metcalfe and William Biasella.

*Frantz Ward LLP*, and *Michael E. Smith*, for Medical Mutual of Ohio.

*Michael DeWine*, Attorney General, and *Jennifer S.M. Croskey*, for Ohio Police & Fire Pension Fund.

APPEALS from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Appellants, Mary Taylor, in her capacity as the Superintendent of the Ohio Department of Insurance ("ODI"), and Timothy Metcalfe and William Biasella ("complainants"), appeal from a judgment of the Franklin County Court of Common Pleas dismissing the administrative appeal at issue for lack of jurisdiction. Because ODI lacked jurisdiction over the self-funded retiree health care plans sponsored by appellees, the City of Akron ("Akron") and the Ohio Police & Fire Pension Fund ("OP&F"), and administered by appellee Medical Mutual of Ohio ("MMO"), we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 2, 2010, Akron appealed an order issued by ODI on July 20, 2010 to the Franklin County Court of Common Pleas. In the July 20, 2010 order, ODI ordered Akron, MMO and OP&F to cease and desist from further violating Ohio's coordination of benefits law, and ordered appellees to coordinate the benefits of their members pursuant to the terms of their plans and consistent with Ohio law.

{¶ 3}   The facts underlying ODI's July 20, 2010 cease and desist order arise from a dispute between Akron and Akron's retired police officers and firefighters regarding the retirees' health care coverage.  The dispute has spawned several legal actions in the Summit County Court of Common Pleas and the Ninth District Court of Appeals.  In *Fraternal Order of Police, Akron Lodge No. 7 v. Akron*, 9th Dist. No. 23332, 2007-Ohio-958, an action related to the instant dispute, the Ninth District Court of Appeals explained the underlying facts as follows:

> Members of the FOP include both current and retired police officers in the City of Akron. These members have primary health insurance through the Ohio Police and Fire Pension Fund ("OP & F") and secondary coverage through the City of Akron. The City has always required retirees to enroll in OP & F's health plan as a condition of participating in the City's secondary plan. Traditionally, members of the FOP were not required to pay for their health insurance. OP & F changed this policy in the early 1990's, when it notified its members that they would have to start paying a premium for health insurance. In 2003, OP & F announced a significant increase in its premiums. Shortly thereafter, FOP member and retired officer Rick Grochowski sought health insurance from the City. The City denied Grochowski's request, informing him that they would no longer provide him with secondary health care because OP & F was no longer his principal health insurance provider. As a result, in February of 2004, retired police officers and retired firefighters ("the retirees") filed a class action lawsuit ("*Metcalfe I*"), seeking recovery on a common law breach of contract claim. See *Metcalfe v. Akron*, Summit Cty. No.2004-02-0717. The retirees filed five claims including a claim for declaratory judgment and a claim for breach of contract. In their declaratory judgment action, the retirees alleged that City of Akron ordinances entitled them to payment of their insurance premiums and that the retirees are not required to enroll in OP & F. The retirees also filed a breach of contract claim alleging that the City's failure to pay insurance premiums constituted a "breach of the various CBA's". The City filed a motion for summary judgment on May 9, 2005. On January 12, 2006, the trial court granted summary judgment in favor of the City, finding that the City did not breach its various CBAs with the Union and was not required to provide retirees with fully-paid primary health coverage under the City's ordinances. This Court affirmed the trial court's ruling on

> August 30, 2006. See *Metcalfe v. Akron*, 9th Dist. No. 23068, 2006-Ohio-4470.
>
> In March of 2004, the FOP brought a grievance against the City for violating the parties' CBA by increasing premiums, requiring retirees to maintain OP & F as their primary coverage and ceasing to provide secondary coverage to certain retirees. The grievance was brought on behalf of the FOP's membership, including "current, former, retired, active members, as well as retired officer Rick Grochowski and all other effected officers who have served or are serving on the Akron Police Department."
>
> The same class of plaintiffs from Metcalfe I filed a second lawsuit ("*Metcalfe II*") against the City, OP & F, and Medical Mutual of Ohio ("MMO") on November 4, 2005. See Metcalfe v. Akron, Summit Cty. No.2005-11-6527. In the second action, the retirees alleged that they are entitled to payment of health insurance claims by the various defendants in compliance with R.C. 3902.13 and Ohio insurance regulations as they relate to the coordination of benefits. The trial court granted stay of *Metcalfe II* pending review by the Ohio Department of Insurance.

*Id.* at ¶ 3-5.

{¶ 4} The matter currently before this court concerns *Metcalfe v. Akron, Summit C.P. No. 2005-11-6527 ("Metcalfe II"),* which the Summit County Court of Common Pleas referred to ODI. The stay order issued by the Summit County Court of Common Pleas indicated that the court would stay the action until ODI ruled on the questions presented by the litigation, or until ODI determined that it lacked jurisdiction in the matter. On February 14, 2006, the complainants submitted a complaint to ODI, asserting that Akron, OP&F and MMO had violated Ohio's coordination of benefits law.

{¶ 5} ODI issued a notice of opportunity for a hearing to Akron, OP&F and MMO on March 12, 2008. ODI noted that Akron and OP&F both operated non-Employee Retirement Income Security Act ("ERISA"), self-funded health care plans, and that MMO acted as the administrator for both plans. In the notice, ODI concluded that, as Akron, OP&F and MMO satisfied the definition of "person" in R.C. 3901.19, they were prohibited from engaging in unfair or deceptive acts or practices in the business of insurance. As R.C. 3902.13 deemed a knowing violation of Ohio's coordination of

benefits provisions to be an unfair or deceptive insurance act or practice, ODI concluded it possessed jurisdiction and that a R.C. 3901.22 hearing was necessary and justified.

{¶ 6}  On September 29, 2008, Akron filed a motion to dismiss the action pending before ODI.  Akron asserted that ODI did not possess jurisdiction over Akron's self-funded health care plan, as the self-funded plan did not constitute insurance.  In support of its contention, Akron attached several letters issued by ODI employees, wherein ODI explained that it did not possess jurisdiction to regulate self-funded health care plans.  One such letter, issued on August 18, 2008, was issued in response to a citizen's concern over OP&F's health care plan and the rising cost of healthcare premiums under that plan.  ODI provided the following response to the citizen's inquiry:

> Allow me to clarify the role and function of the Ohio Department of Insurance. Our responsibility is to enforce insurance laws and regulations as applicable to insurance companies in accordance with Title 39 of the Ohio Revised Code (ORC). Entities that are "self-funded;" generally large employers such as hospitals or manufacturers and most, if not all public employee or government-sponsored retiree plans, fall into the category of "self-funded." The funding of the benefit plan, whether by the employer, group, or another party, generally exempts it from the obligations and requirements of ORC. As such, any complaints against OP&F would not fall under the regulatory authority of this agency. This is not only the case with your plan, but the other retiree plans (State Teachers' Retirement System (STRS), Public Employee Retirement System (PERS), private-employer retiree plans) as well. Please understand; this is not to suggest that a "self-funded" plan is not required to comply with any law; there may be applicable Federal regulations. However, these plans do not fall under the jurisdiction of *state* insurance law.

(Emphasis sic.) (Hearing Officer's Record, 11; Akron's Motion to Dismiss, exhibit B.)

{¶ 7}  Relying on these letters, Akron asserted that ODI could not now attempt to claim that it possessed jurisdiction over Akron's self-funded health care plan.[1]  Akron also asserted that, as the "retiree medical benefit plans have arisen out of collective

---

[1] The other letters were issued on March 28, 2008; March 10, 2008; March 7, 2008; January 14, 2008; October 1, 2007; August 15, 2007; August 22, 2007; August 29, 2007; April 5, 2007; and December 20, 2006. The letters all indicate that ODI does not possess jurisdiction to regulate self-funded or self-insured plans.

bargaining agreements between the City and the unions representing its safety forces," any alleged violations of the obligations under the union contracts could be addressed through the grievance procedures called for under those collective bargaining agreements. (Hearing Officer's Record, 11; Akron's Motion to Dismiss, 8.)

{¶ 8} Akron supported its motion to dismiss with the affidavit of Mark McLeod, Akron's employee benefits manager, and Akron's group insurance plan for retirees. McLeod explained that Akron sponsored two self-funded medical plans: one for its active police officers and firefighters and one for its retired police officers and firefighters. McLeod also explained that Akron had, "for decades, made contributions throughout the careers of all of its active police officers and firefighters to the Ohio Police and Fire Pension Fund," which in turn provided pension benefits and health care coverage to all retired police officers and firefighters in Ohio. (Hearing Officer's Record, 11; Akron's Motion to Dismiss, exhibit A; McLeod Affidavit, ¶ 5.) McLeod stated that "Akron's retiree medical plan, through its contract with MMO, [was] secondary or supplemental to the OP&F retiree medical insurance plan." (Hearing Officer's Record, 11; Akron's Motion to Dismiss, exhibit A; McLeod Affidavit, ¶ 9.) Akron administers its retiree medical benefits plan "in such a way that medical claims for police and fire retirees and their dependents cannot be processed unless they have first been processed under the OP&F plan as the primary plan." (Hearing Officer's Record, 11; Akron's Motion to Dismiss, exhibit A; McLeod Affidavit, ¶ 10.)

{¶ 9} Akron's group insurance plan for retirees provides for the coordination of benefits between it and any other plan under which a retiree receives health care coverage. The order of benefits determination rules expressly state that payment under the plan will be reduced to the extent that an eligible member is paid or entitled to be paid "by any medical care plan which has been established by: * * * the Police and Firemen's Disability and Pension Fund of Ohio; provided you and your Dependents are eligible to enroll in any of these plans." (Hearing Officer's Record, 11; Akron's Motion to Dismiss, exhibit A; McLeod Affidavit, exhibit No. 2; Akron's Group Insurance Plan, 37.) The remaining order of benefits determination rules contained in Akron's plan substantively mirror the order of benefit determination rules found in Ohio's coordination of benefits law, R.C. 3902.13. The OP&F health care plan also contains a

coordination of benefits provision, which provides that the order of benefits determination rules shall be determined pursuant to the rules outlined by ODI. (*See* Hearing Officer's Record, 43; ODI's exhibit L; Ohio Police & Fire Pension Fund, Amended and Restated Health Care Plan, Section 7.2.)  MMO's contract with Akron states that "[i]n administering coordination of benefits under this agreement, Medical Mutual will assume that the City's plan is secondary for all retirees and survivors." (Hearing Officer's Record, 43; ODI's exhibit C1; Medical Mutual Services Group Contract, Section 8.4.)

{¶ 10} An ODI hearing officer overruled Akron's motion to dismiss on April 28, 2009.  The hearing officer determined that Akron's self-funded retiree health care plan was a legal entity, and thus a person, under R.C. 3901.19(A). The hearing officer further concluded that Akron's self-funded medical plan was an organization under R.C. 3901.19(D), and constituted a plan of health coverage under R.C. 3902.11(B)(3).  The hearing officer concluded that Akron's "self-insured insurance fund provided for its police and fire retirees" was "insurance provided within the State of Ohio and [was] subject to the insurance laws of this state pursuant to" R.C. 3901.20.  (Hearing Officer's Record, 18; Hearing Officer's Ruling on Motion to Dismiss, ¶ 25.)  The hearing officer also found "a colorable claim" that Akron had violated R.C. 3902.13(K).

{¶ 11} The hearing officer issued a report and recommendation, including findings of fact and conclusions of law on April 7, 2010.  The hearing officer found that the complainants became eligible for the Akron retiree health care plan and the OP&F health care plan on the same day: the day of their respective retirements.  The hearing officer noted that while the complainants paid no premiums for their coverage under Akron's self-funded retiree health care plan, they paid premiums of approximately $300 and $566 per month, respectively, for their coverage under OP&F.  Pursuant to McLeod's affidavit, the hearing officer found that retired Akron police officers and firefighters must enroll in OP&F's insurance plan as a condition precedent to receiving any coverage under Akron's plan.

{¶ 12} The hearing officer concluded that "Akron's knowing failure to apply legally appropriate coordination of benefits provisions of its self-insured program constitutes a violation of [R.C.] 3902.13(K)(1), and is, therefore, deemed an unfair and

deceptive practice as a matter of law."  (Hearing Officer's Record, 78; Hearing Officer's Report and Recommendation, ¶ 39.)  The hearing officer also determined that Akron violated R.C. 3902.13(K)(2), by requiring the retirees to enroll in OP&F as a condition precedent to coverage under Akron's plan.  Accordingly, the hearing officer concluded that Akron's actions constituted an unfair or deceptive act or practice under R.C. 3901.20, and recommended that ODI issue a cease and desist order.

{¶ 13} On July 20, 2010, ODI issued an order adopting the hearing officer's report and recommendation, with only minor modifications.  Following the hearing officer's recommendation, ODI ordered that Akron, OP&F and MMO cease and desist from further violations of Ohio's coordination of benefits laws, and that they coordinate the benefits of their members pursuant to the terms of their plans and consistent with Ohio law.  ODI further ordered that Akron immediately cease and desist from further violations of R.C. 3902.13(K)(1) and (2), and that Akron make an accounting of the complainants' past healthcare claims which were subject to coordination.  ODI lastly ordered that its order be "directed to the Summit County Court of Common Pleas for further application in the case of *Metcalfe, et al.*, Case No. 2005-11-6527."  (ODI's July 20, 2010 Order, 12.)

{¶ 14} Akron, OP&F and MMO each appealed ODI's July 20, 2010 order to the Franklin County Court of Common Pleas.  The trial court consolidated the cases into one action. On October 12, 2010, the trial court granted Akron's motion to suspend enforcement of the July 20, 2010 order during the pendency of the case.

{¶ 15} On September 28, 2011, the trial court issued an entry ordering that the case be transferred to the Summit County Court of Common Pleas.  The court noted that the July 20, 2010 order specified that the order should be directed to the Summit County Court of Common Pleas for application in *Metcalfe II*.  Akron, OP&F and MMO jointly appealed the transfer order.  On April 25, 2012, this court issued a journal entry reflecting the parties' agreement to remand the case to the trial court, so that the trial court could address the appeal pursuant to R.C. 119.12.  On February 1, 2013, the trial court reactivated the case.

{¶ 16} On May 9, 2013, the trial court issued an order dismissing the administrative appeal for lack of subject-matter jurisdiction.  The court noted that the

health care plans offered by Akron and OP&F were not insurance, but merely a risk of loss retention fund. The court explained that such a funding mechanism was not insurance, but "the antithesis of insurance." (Final Judgment Entry, 3.) The court noted ODI's assertion that it was merely regulating the market-place conduct of a plan of health coverage under R.C. 3902.11(B). While the trial court found that this argument held "superficial appeal," it determined the argument failed because ODI had expressly concluded that Akron's self-funded insurance plan was insurance and subject to the insurance laws of this state. (Final Judgment Entry, 3.) The court further noted that R.C. 3901.20 prohibited unfair and/or deceptive acts or practices in the business of insurance, and thus could not "reach beyond persons engaged in the business of insurance." (Final Judgment Entry, 3-4.) Thus, because Akron and OP&F were engaged in conduct which was the antithesis of insurance, the court concluded that ODI's July 20, 2010 order was void for lack of subject-matter jurisdiction.

## II. ASSIGNMENTS OF ERROR

{¶ 17} ODI appeals, assigning the following errors:

> [I.] The common pleas court erred by holding that the Department lacked subject matter jurisdiction to enforce Akron and OP&F's use of a coordination of benefit provision in their plans of health coverage.
>
> [II.] The common pleas court's rationale supporting its ultimate decision is so flawed and internally inconsistent that it alone constitutes reversible error.
>
> [III.] The Common Pleas Court Erred by Failing to Acknowledge or Address the Department Jurisdiction Under the Doctrine of Primary Administrative Jurisdiction.

{¶ 18} The complainants appeal, assigning the following errors:

> I. THE TRIAL COURT ERRED IN HOLDING THAT THE CITY OF AKRON AND THE OHIO POLICE & FIRE PENSION FUND DO NOT OFFER INSURANCE.
>
> II. THE TRIAL COURT ERRED IN RULING THAT THE OHIO DEPARTMENT OF INSURANCE DID NOT HAVE SUBJECT MATTER JURISDICTION.

## III.  STANDARD OF REVIEW

{¶ 19} Under R.C. 119.12, a common pleas court, in reviewing an order of an administrative agency, must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and the order is in accordance with law.  *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' "  (Emphasis sic.)  *Lies v. Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955).  The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive."  *Univ. of Cincinnati* at 111.  The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is "in accordance with law." *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

{¶ 20} An appellate court's review of an administrative decision is more limited than that of a common pleas court.  *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).  The appellate court is to determine only whether the common pleas court abused its discretion.  *Id.*  Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of an administrative agency or the common pleas court. *Id.*  An appellate court, however, has plenary review of purely legal questions.  *Big Bob's, Inc. v. Ohio Liquor Control Comm.,* 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.)

{¶ 21} The trial court dismissed the administrative appeal upon finding that ODI did not possess subject-matter jurisdiction to issue the cease and desist order at issue. Jurisdiction is a legal question, which courts review de novo.  *In re: P.N.M.*, 4th Dist. No. 07CA841, 2007-Ohio-4976, ¶ 38.

## IV. COMPLAINANTS' FIRST ASSIGNMENT OF ERROR—A SELF-FUNDED HEALTH CARE PLAN IS NOT INSURANCE

{¶ 22} The complainants' first assignment of error asserts the trial court erred in holding that the self-funded health care plans offered by Akron and OP&F were not insurance. The complainants note that *Black's Law Dictionary* (8th Ed.2004) defines insurance as "a contract by which one party (the insurer) undertakes to indemnify another party (the insured) against the risk of loss, damage or liability arising from some specified contingency." The complainants assert that Akron and OP&F offer plans of insurance because they have agreed to pay or indemnify the retirees when they incur costs resulting from medical services.

{¶ 23} Complainants focus solely on the fact that, ultimately, Akron's retired police officers and firefighters will have their medical bills paid through the health care plans offered by Akron and OP&F. However, the fact that the retirees' medical bills will ultimately be paid is not the correct basis on which to determine whether the health care plans at issue amount to insurance.

{¶ 24} All of the parties agree that Akron's retiree health care plan and OP&F's health care plan are self-funded. A self-funded plan or " 'self-insurance,' is not 'insurance.' " *Physicians Ins. Co. of Ohio v. Grandview Hosp. and Med. Ctr.*, 44 Ohio App.3d 157 (1988), syllabus ("*PICO*"). As the *PICO* court explained, " 'an insurance contract denotes a policy issued by an authorized and licensed insurance company whose primary business it is to assume specific risks of loss of members of the public at large in consideration of the payment of a premium.' " *Id.*, quoting *American Nurses Assn. v. Passaic Gen. Hosp.*, 192 N.J.Super. 486 (1984).

{¶ 25} While "[i]nsurance shifts the risk of loss from an insured to an insurer," self-insurance " 'is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract.' " *Id.* at 158. *See also Platte v. Ford Motor Co.*, N.D. Ohio No. 3:00CV7171 (June 18, 2002), quoting *Black's Law Dictionary* 1360 (6th Ed.1990) (noting that "[s]elf-insurance is 'the practice of setting aside a fund to meet losses instead of insuring against such through insurance' "); *Young v. Progressive Southeastern Ins. Co.*, 753 So.2d 80, 85 (Fl.2000), quoting 1 Eric Mills Holmes and Mark S. Rhodes, *Appleman on Insurance*, Section 1.3, at 10 (2d Ed.1996) (explaining

that, self-insurance does not constitute insurance in any traditional form, because " '[i]n self-insurance the company, governmental entity or individual chooses not to purchase insurance but rather retains the risk of loss' " and sets " 'aside funds on a regular basis to provide its own pool from which losses will be paid' "). *Compare FMC Corp. v. Holliday*, 498 U.S. 52, 63 (1990) (in concluding that the deemer clause in ERISA exempted self-funded ERISA plans from state laws regulating insurance, the Supreme Court noted that "[b]y recognizing a distinction between insurers of plans and the contracts of those insurers, which are subject to direct state regulation, and self-insured employee benefit plans governed by ERISA, which are not," the Supreme Court observed "Congress' presumed desire to reserve to the States the regulation of the 'business of insurance' ").

{¶ 26} Thus, fundamentally, the self-funded health care plans offered by Akron and OP&F are not insurance. Akron and OP&F have not shifted their risk of loss onto an insurer by purchasing an insurance policy. Rather, OP&F and Akron each individually set money aside in order to pay the health care costs incurred by the police and fire retirees covered under their plans. OP&F and Akron have thus both retained the risk of loss resulting from such medical services and, as such, their self-funded health care plans do not constitute insurance.

{¶ 27} Based on the foregoing, the complainants' first assignment of error is overruled.

## V. ODI'S FIRST AND SECOND ASSIGNMENTS OF ERROR; COMPLAINANTS' SECOND ASSIGNMENTS OF ERROR: ODI'S JURISDICTION

{¶ 28} ODI's first assignment of error and the complainants' second assignment of error collectively assert that the trial court abused its discretion by finding that ODI did not possess jurisdiction to regulate the coordination of benefits between Akron's and OP&F's self-funded healthcare plans. In its second assignment of error, ODI contends that the trial court's rationale for determining that ODI lacked jurisdiction was flawed and internally inconsistent. As these assignments of error all relate to the determination that ODI lacked jurisdiction to issue the cease and desist order, we will address them jointly.

{¶ 29} ODI and the complainants collectively assert that ODI possesses jurisdiction to regulate the coordination of benefits between Akron's and OP&F's health care plans, pursuant to the relevant statutes. ODI asserts that it is not attempting to regulate Akron or OP&F as individual entities, "but rather seeks to have the parties follow Ohio's coordination of benefits laws when offering health insurance plans containing such provisions." (ODI's Appellate Brief, 14-15.) ODI thus frames the issue before this court as whether ODI possesses "limited jurisdiction over the subject of coordination of benefits" between the retiree health care plans offered by Akron and OP&F. (ODI's Appellate Brief, 15.) Although ODI now frames the issue as whether it has limited jurisdiction over the issue of coordination of benefits, we note that in ruling on Akron's motion to dismiss, the ODI hearing officer expressly found that the self-funded health care plans offered by Akron and OP&F were insurance and thus subject to the insurance laws of this state.

{¶ 30} An administrative agency can exercise only those powers that are expressly conferred upon it by the Ohio General Assembly. *Shell v. Ohio Veterinary Med. Licensing Bd.*, 105 Ohio St.3d 420, 2005-Ohio-2423, ¶ 32. "[A]uthority that is conferred upon an administrative agency by the General Assembly cannot be extended by the agency." *Burger Brewing Co. v. Thomas*, 42 Ohio St.2d 377, 379 (1975). In construing a grant of administrative power from a legislative body, the intention of that grant of power, and the extent of the grant, must be clear, and, if there is doubt, that doubt must be resolved against the grant of power. *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, ¶ 40. Furthermore, where jurisdiction is dependent upon a statutory grant, courts are without authority to create jurisdiction when the statutory language does not, as that power resides only in the General Assembly. *Waltco Truck Equip. Co. v. Tallmadge Bd. of Zoning Appeals*, 40 Ohio St.3d 41, 43 (1988).

{¶ 31} " 'A basic rule of statutory construction requires that 'words in statutes should not be construed to be redundant, nor should any words be ignored.' " *D.A.B.E.* at ¶ 26, quoting *E. Ohio Gas Co. v. Pub. Util. Comm.,* 39 Ohio St.3d 295, 299 (1988). Furthermore, statutory language " 'must be construed as a whole and given such interpretation as will give effect to every word and clause in it.' " *Id.* at ¶ 26, quoting

*State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.,* 95 Ohio St. 367, 372-73 (1917).

{¶ 32} Coordination of benefits means "a procedure establishing the order in which plans shall pay their claims, and permitting secondary plans to reduce their benefits so that the combined benefits of all plans do not exceed total allowable expenses." Ohio Adm.Code 3901-8-01(C)(6). R.C. 3902.13 codifies Ohio's coordination of benefits laws. The statute provides that "[a] plan of health coverage determines its order of benefits using the first that applies: * * * (6) If none of the rules in divisions (A)(1), (2), (3), (4) and (5) of this section determines the order of benefits, the primary plan is the plan that covered the employee * * * longer." Here, none of the provisions in R.C. 3902.13(A)(1) through (5) could apply. Notably, ODI determined that the plans at issue have covered the complainants for the same amount of time, as each plan became effective upon the complainants' retirement. Ohio Adm.Code 3901-8-01(G)(6) provides that if none of the "preceding rules determines the order of benefits, the allowable expenses shall be shared equally between the plans."

{¶ 33} R.C. 3902.13(K)(1) provides that "[n]o third-party payer shall knowingly fail to comply with the order of benefits as set forth in division (A) of this section." R.C. 3902.13(K)(2) provides that "[n]o primary plan shall direct or encourage an insured to use the benefits of a secondary plan that results in a reduction of payment by such primary plan." Whoever violates R.C. 3902.13(K) "is deemed to have engaged in an unfair and deceptive insurance act or practice under sections 3901.19 to 3901.26 of the Revised Code, and is subject to proceedings pursuant to those sections." R.C. 3902.13(L).

{¶ 34} R.C. 3902.11 provides definitions for the terms used in sections 3902.11 to 3902.14 of the Revised Code. R.C. 3902.11(B) defines a plan of health coverage to include any of the following:

> (1) An individual or group sickness and accident insurance policy, which policy provides for hospital, dental, surgical, or medical services;
>
> (2) Any individual or group contract of a health insuring corporation, which contract provides for hospital, dental, surgical, or medical services;

(3) Any other individual or group policy or agreement under which a third-party payer provides for hospital, dental, surgical, or medical services.

(C) "Provider" means a hospital, nursing home, physician, podiatrist, dentist, pharmacist, chiropractor, or other licensed health care provider entitled to reimbursement by a third-party payer for services rendered to a beneficiary under a benefits contract.

{¶ 35} The self-funded health care plans offered by Akron and OP&F contain coordination of benefits provisions. Accordingly, ODI and complainants contend that Akron and OP&F offer plans of health coverage under R.C. 3902.11(B)(3). R.C. 3902.11(B)(3), however, is only applicable to a third-party payer. R.C. 3902.11(A) states that the term "third-party payer" has the same meaning as that term has in R.C. 3901.38. R.C. 3901.38(F) defines a third-party payer to include any of the following:

(1) An insurance company;

(2) A health insuring corporation;

(3) A labor organization;

(4) An employer;

(5) An intermediary organization, as defined in section 1751.01 of the Revised Code, that is not a health delivery network contracting solely with self-insured employers;

(6) An administrator subject to sections 3959.01 to 3959.16 of the Revised Code;

(7) A health delivery network, as defined in section 1751.01 of the Revised Code;

(8) Any other person that is obligated pursuant to a benefits contract to reimburse for covered health care services rendered to beneficiaries under such contract.

{¶ 36} ODI asserts that Akron and OP&F qualify as third-party payers under R.C. 3901.38(F)(8), as they have obligated themselves to pay the health benefits of their retirees pursuant to contract. R.C. 3901.38(F)(8) applies only to a person who is obligated to reimburse for covered health care services. Neither R.C. 3901.38 nor

3902.11 define the word person.  Although R.C. 3901.19 defines the term "person," the definitions therein are applicable only to section 3901.19 to 3901.26 of the Revised Code.  Accordingly, the definition of person in R.C. 3901.19(D) is inapplicable to either R.C. 3902.11 or 3901.38.  As such, we must rely on the general definition of the word "person" contained in R.C. 1.59(C), which defines a person to include "an individual, corporation, business trust, estate, trust, partnership, and association."  Akron is a political subdivision and OP&F is a pension fund.  Thus, as neither entity qualifies as a person under R.C. 1.59(C), neither Akron nor OP&F can qualify as a third-party payer under R.C. 3901.38(F)(8).

{¶ 37}  Although Akron is technically an employer, R.C. 3901.38(F) distinguishes between employers and self-insured employers.  While an employer may be a third-party payer under R.C. 3901.38(F)(4), and 3901.38(F)(5) states that an intermediary organization may qualify as a third-party payer, the intermediary organization will not qualify as a third-party payer if it is a health delivery network contracting solely with a self-insured employer.  *See* R.C. 1751.01(P) (defining an intermediary organization).  A health delivery network alone may also be a third-party payer under R.C. 3901.38(F)(7).

{¶ 38}  It appears unreasonable to construe one of the provisions in R.C. 3901.38(F) to include a self-insured employer, when the statute expressly excludes a health delivery network contracting solely with a self-insured employer from the definition of a third-party payer.  *Compare Thomas v. Freeman*, 79 Ohio St.3d 221, 224 (1997), quoting *Black's Law Dictionary* 581 (6th Ed.1990) (noting the principle of expressio unis est exclusio alterius, which means " 'the expression of one thing is the exclusion of the other' "); *New Albany Park Condominium Assn. v. Lifestyle Communities, Ltd.*, 195 Ohio App.3d 459, 2011-Ohio-2806 (10th Dist.), ¶ 23, quoting *Barnhart v. Peabody Coal Co*, 537 U.S. 149, 168 (2003) (noting that the " 'canon expressio unius est exclusio alterius does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an "associated group or series," justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence' ").  As the statute expressly mentions self-insured employers, but does not include them among the list of entities that may be considered a

third-party payer, it appears the General Assembly intentionally did not include self-insured entities in the definition of third-party payer in R.C. 3901.38(F).

{¶ 39} Our conclusion herein is further bolstered by the fact that other sections in the Revised Code which regulate insurance do expressly apply to self-insured entities. All statutes relating to the same subject matter must be read in pari materia, and construed together, so as to give the proper force and effect to each and all such statutes. *State v. Cook,* 128 Ohio St.3d 120, 2010-Ohio-6305, ¶ 45. *See also State v. Moaning*, 76 Ohio St.3d 126, 128 (1996) (noting that courts should construe statutory provisions together and read the Revised Code "as an interrelated body of law"); *Santarelli v. Western Reserve Transit Auth.*, 7th Dist. No. 88 C.A. 57 (Feb. 10, 1989), quoting 85 Ohio Jurisprudence 3d, Statutes, Section 225, 228 (noting that " '[t]he rule of in pari materi is a reflection of the fact that the General Assembly, in enacting a statute, is assumed, or presumed, to have legislated with full knowledge and in the light of all statutory provisions concerning the subject matter of the act' ").  "The *in pari materia* rule of construction may be used in interpreting statutes where some doubt or ambiguity exists." *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 585 (1995).

{¶ 40} Chapter 39 of the Revised Code relates specifically to insurance.  Several provisions in Chapter 39 expressly regulate self-insured plans and self-insured entities. *See* R.C. 3901.40 (providing that "[n]o insurance company, health insuring corporation, or self-insured plan authorized to do business in this state shall include or provide in its policies * * * reimbursement for services in any hospital which is not certified or accredited"); R.C. 3901.45(A)(2) (prohibiting insurers from considering an applicant's sexual orientation when determining insurability, and defining insurer for purposes of the statute to mean "any person authorized to engage in the business of life or sickness and accident insurance * * * or any person or governmental entity providing health services coverage for individuals on a self-insurance basis"); R.C. 3901.50(B)(1) (providing that "[n]o self-insurer, in processing an application for coverage under a plan of self-insurance or in determining insurability under such a plan, shall * * * [r]equire an individual seeking coverage to submit to genetic screening or testing"); R.C. 3923.38(A)(1) (providing for the continuation of health care coverage to certain terminated employees, and defining group policy for purposes of the statute to mean

"any group sickness and accident policy or contract * * *, and any private or public employer self-insurance plan"); R.C. 3923.382(A)(2) (providing for the continuation of group plan coverage during an eligible person's military service, and stating that a group plan includes "any private or public employer self-insurance plan" which provides for health benefits "other than through an insurer or health insuring corporation"). *Compare* R.C. 9.833(B)(1) and (C)(10) (providing that political subdivisions "that provide health care benefits for their" employees may "[e]stablish and maintain an individual self-insurance program with public moneys to provide authorized health care benefits," that these individual self-insurance programs can join together and agree to be jointly administered; and providing that a joint self-insurance program is "not an insurance company" and its operation "does not constitute doing an insurance business and is not subject to the insurance laws of this state").

{¶ 41} Construing R.C. 3902.13 and 3901.38(F) in pari materia with the other statutes in Chapter 39 which expressly regulate self-insurance, it is apparent that the General Assembly intentionally chose not to make self-insured health care plans subject to the coordination of benefits laws.  The General Assembly could have included a self-insured entity in the definition of third-party payer in R.C. 3901.38(F), or expressly made R.C. 3902.13 applicable to self-insured plans of health coverage.  As the General Assembly did not make the coordination of benefits law applicable to self-insured entities, when it has made other insurance laws applicable to self-insured entities, we conclude that the coordination of benefits law in R.C. 3902.13 is inapplicable to self-insured health care plans.  Accordingly, ODI lacked jurisdiction to regulate Akron's and OP&F's self-insured retiree health care plans.

{¶ 42} We further note that ODI issued the cease and desist order on the basis that, due to the violation of R.C. 3902.13(K), Akron's actions constituted an unfair or deceptive act under R.C. 3901.20.  R.C. 3901.221 states that if a violation of R.C. 3901.20 has caused or is about to cause substantial and material harm, the superintendent of insurance may issue an order that the person cease and desist from any activity violating that section.  R.C. 3901.20 provides that "[n]o person shall engage in this state in any trade practice which is defined in sections 3901.19 to 3901.23 of the Revised Code as, or determined pursuant to those sections to be, an unfair or deceptive

act or practice in the business of insurance."  Because the self-funded plans at issue are fundamentally not insurance, ODI could not find that Akron or OP&F had committed an unfair or deceptive act in the business of insurance.  *See also* R.C. 3901.19(I) and 3901.32(D) (defining an insurer as "any person engaged in the business of insurance, * * * excepting any agency, authority, or instrumentality of the United States, its possessions and territories, * * * or a state or political subdivision of a state").

{¶ 43} Accordingly, we find that the trial court correctly concluded that ODI lacked jurisdiction to issue the cease and desist against Akron, OP&F and MMO.  Because Akron, OP&F and MMO are not subject to the requirements of R.C. 3902.13, they could not have been deemed to engage in an unfair or deceptive insurance acts under R.C. 3902.13(L).  By issuing the cease and desist order against Akron, OP&F and MMO, ODI sought to impermissibly expand its authority, beyond what authority the General Assembly saw fit to provide it with.

{¶ 44} Complainants and ODI argue that the result herein is unjust, as the complainants are now left without a remedy.  We disagree.  Although it is true that the complainants do not have a cause of action to enforce Ohio's coordination of benefits laws against Akron and OP&F, this is because the coordination of benefits laws are not applicable to self-funded health care plans.  Akron police officers and firefighters are both members of unions.  These unions enter into collective bargaining agreements with Akron.  The unions may negotiate and attempt to include provisions in their collective bargaining agreements which would obligate Akron to coordinate the benefits in their retiree health care plans in a way the complainants' desire.  Complainants may then enforce these provisions by filing grievances under their respective collective bargaining agreements.  *See Fraternal Order of Police, Akron Lodge No. 7* at ¶ 4, 30 (finding that the grievance, asserting that Akron violated the collective bargaining agreement by increasing premiums, requiring retirees to maintain OP&F as their primary coverage, and ceasing to provide secondary coverage to certain retirees, was subject to arbitration).  As the issue before us does not come within ODI's statutory jurisdiction, the complainants' remedy lies in their ability to negotiate for new terms under their collective bargaining agreements.

{¶ 45} Based on the foregoing, ODI's first and second assignments of error, and the complainants' second assignment of error are overruled.

## VI.  ODI'S THIRD ASSIGNMENT OF ERROR—PRIMARY ADMINISTRATIVE JURISDICTION

{¶ 46} ODI's third assignment of error asserts the trial court erred by failing to acknowledge or address ODI's jurisdiction under the doctrine of primary administrative jurisdiction.

{¶ 47} The doctrine of primary administrative jurisdiction permits a court to avail itself of the expertise of an administrative agency having special competence in the matter at hand.  *Cleveland Elec. Illuminating Co. v. Cleveland*, 50 Ohio App.2d 275, 287 (8th Dist.1976).  Primary administrative jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."  *United States v. Western Pacific Ry. Co.*, 352 U.S. 59, 64 (1956).  In such a case, "the judicial process is suspended pending referral of such issues to the administrative body for its views."  *Id.*  There is no fixed formula for applying the doctrine of primary administrative jurisdiction, rather in each case "the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation."  *Id.*

{¶ 48} ODI asserts that even if R.C. 3902.13 "did not specifically vest the Department with jurisdiction over the issue of coordination, the doctrine of primary administrative jurisdiction would provide a separate alternative basis for the Department to assert jurisdiction." (ODI's Appellate Brief, 34.)  We disagree.  As ODI did not possess subject-matter jurisdiction to regulate the self-funded health care plans offered by Akron and OP&F, the doctrine of primary administrative jurisdiction could not vest jurisdiction in ODI.

{¶ 49} Based on the foregoing, ODI's third assignment of error is overruled.

## VII. DISPOSITION

{¶ 50} Having overruled ODI's first, second and third assignments of error, and having overruled the complainants' first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

_____