[Cite as *McRae v. State Med. Bd. of Ohio*, 2014-Ohio-667.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Sharon L. McRae, M.D., | : | |
| Appellant-Appellant, | : | No. 13AP-526 |
| | | (C.P.C. No. 13CV-834) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| State Medical Board of Ohio, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on February 25, 2014

*Whonsetler & Johnson, PLLC*, and *Christopher Piekarski*, for appellant.

*Michael DeWine*, Attorney General, *Melinda R. Snyder* and *Katherine J. Bockbrader*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1} Appellant, Sharon L. McRae, M.D., appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, the State Medical Board of Ohio (the "Board"), finding her in violation of R.C. 4731.22(B)(19)[1] and placing her on probation. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant has a certificate to practice medicine and perform surgery in Ohio. In March 2012, the Board notified appellant it had reason to believe she was in

---

[1] We note the first page of the common pleas court's Decision and Entry affirming the Board's order mistakenly refers to "R.C. 4731.11(B)(19)."

violation of R.C. 4731.22(B)(19) and was unable to practice medicine according to acceptable and prevailing standards of care by reason of mental illness. The Board ordered her to undergo a psychiatric evaluation by Stephen Noffsinger, M.D. After the evaluation, Dr. Noffsinger opined appellant had a mental illness that rendered her unable to practice. The Board's Secretary and Supervising Member found she violated R.C. 4731.22(B)(19), and the Board summarily suspended her certificate to practice. Appellant requested a hearing on the matter. Although the hearing examiner issued a lengthy summary of the evidence adduced at this hearing, we will only highlight some of the evidence here.

{¶ 3} Appellant testified she has worked in the medical field since age 17. She began medical school in 2002 at age 39. She graduated in 2006, overcoming several stressful events, such as the death of family members and a period of homelessness. After completing her residency, appellant worked for Qualified Emergency Specialists ("QESI") in Cincinnati, Ohio, from July 2009 to July 2010. Appellant and QESI's administration had disagreements because, according to appellant, QESI wanted her to engage in unethical and possibly unlawful prescribing practices to boost patient satisfaction scores. She also believed QESI owed her money under their contract. In June 2010, a few days after appellant learned QESI planned to replace her, she experienced chest pain and was admitted to Deaconess Hospital ("Deaconess"). A doctor performed a psychiatric consult and diagnosed her with an acute stress reaction.

{¶ 4} After leaving QESI, appellant worked as a locum tenens (temporary substitute) emergency room physician at various locations in Ohio, Kentucky, and Michigan. Appellant testified about the difficult conditions she faced during her work at Lake West Hospital ("Lake West") in Ohio between December 28, 2010 and January 2, 2011. She worked 83.5 hours during that time frame in an understaffed emergency room. Her scheduled 12 hour shift on January 1 and 2, 2011, turned into an over 20-hour shift. She was sleep deprived and subsisted on snack foods and energy drinks. According to appellant, hospital staff questioned or disregarded her orders, and she became particularly upset when someone transferred a child who was under her care without her knowledge.

{¶ 5}   Appellant eventually left Lake West around 1:30 p.m. on January 2, 2011. She testified that while driving home, she called the regional medical director but began to vomit and have leg cramps.  Appellant pulled over, and the director had a police officer check on her.  She remained parked until around 5:30 p.m., talking on the phone. According to appellant, she then tried to drive to her hotel but began to suffer massive body cramps and called 911.  During the 911 call, appellant became convinced she was trapped on train tracks with a train rushing toward her.  However, the 911 operator tried to assure appellant the lights she saw actually belonged to a vehicle of someone en route to assist her.  EMS transported appellant to MetroHealth Medical Center ("MetroHealth") where she was admitted and kept overnight in the psychiatric unit.

{¶ 6}   EMS records indicate appellant called 911 because she became too upset to drive.  The January 4, 2011 discharge notes from MetroHealth indicate appellant claimed she had difficulty driving more than 10 m.p.h. and drove around for 6 hours before she called for help.  The notes also indicate her speech was rambling, and she was "agitated and tangential."  (R. 17, Record of Proceedings, 31.)  Appellant was diagnosed with an acute adjustment disorder due to job-related stress, sleep deprivation, and dehydration, and her symptoms resolved after she got adequate rest.

{¶ 7}   On January 5, 2011, appellant went to the emergency room at Hillcrest Hospital ("Hillcrest") complaining of chest pains.  Then, on January 7, 2011, she went to MetroHealth for a follow-up appointment with a psychiatrist.  MetroHealth admitted her to its psychiatric unit for inpatient treatment that day and discharged her on January 10, 2011.  The discharge notes indicate the admission was due to appellant's inability to care for herself.  However, the notes also indicate she initially agreed to the admission. According to the notes, appellant reported an inability to sleep after her January 4 discharge and concentration problems. She wanted to be in the hospital to start sleep medication.  The notes indicate appellant was irritable and labile, accused "every staff member of not listening to her," gave inconsistent histories, and expressed frustration over not being discharged after 24 hours. (Record of Proceedings, 40.)  She was diagnosed with a brief psychotic reaction.  Appellant followed up with another doctor around one week later who did not recommend any further treatment.

{¶ 8}   Appellant testified she agreed to a one-day admission on January 7 so a doctor who treated her on January 2 would not report her to the Board "for altered mental status." (Tr. Vol. I, 132.)  The admission lasted longer due to a "miscommunication." (Tr. Vol I, 134.)  One of appellant's experts suggested the symptoms she exhibited during the second admission were due to stress over what happened at Lake West and the fact she became more distressed when MetroHealth refused to let her leave and she learned insurance would not pay for the extended hospital stay.

{¶ 9}   Dr. Noffsinger testified he diagnosed appellant with an episodic psychotic disorder not otherwise specified.  He opined that she had two, possibly three psychotic episodes as evidenced by the Deaconess admission and two MetroHealth admissions.  Dr. Noffsinger testified he thought stress and dehydration played a role in the events of January 2011, but appellant had an abnormal response to frequently encountered stressors.  He also diagnosed appellant with an anxiety disorder not otherwise specified. He found she had the "psychopathology of a personality style that has led to interpersonal conflict, decompensation under stress, occupational/relationship dysfunction, disruptive behavior, and multiple complaints by patients and colleagues." (Record of Proceedings, 1535.)  Dr. Noffsinger opined she was unable to practice medicine according to acceptable and prevailing standards of care.  In contrast, appellant had two experts testify she did not suffer from a mental illness.

{¶ 10} The hearing examiner's report and recommendation proposed brief "FINDINGS OF FACT," which are nearly identical to statements that appear in the Board's pre-hearing notice of summary suspension:

> 1. By letter dated March 22, 2012, the Board notified Sharon Leilani McRae, M.D., of its determination that it had reason to believe that Dr. McRae was in violation of Section 4731.22(B)(19), Ohio Revised Code, and ordered her to undergo a psychiatric examination to determine if she was in violation of Section 4731.22(B)(19), Ohio Revised Code.  The Board's determination was based upon one or more of the reasons outlined in the letter, which included Dr. McRae's history of psychiatric admissions at MetroHealth Medical Center in January 2012 [sic], concerns about her bedside manner with patients and interaction with coworkers, and her disclosure to Board staff that she had offered a recording to CNN for a story on medical abuse and that she was

considering a lawsuit against MetroHealth Hospital on various charges including false imprisonment.

2. By letter dated June 6, 2012, from Stephen G. Noffsinger, M.D., the Board was notified that following the Board-ordered evaluation conducted on or about April 18, 2012, Dr. McRae was determined to be have [sic] the diagnoses of Anxiety Disorder, Not Otherwise Specified, and Psychotic Disorder, Not Otherwise Specified, resulting in an inability to practice according to acceptable and prevailing standards of care. It was further determined that Dr. McRae's mental disorders and other psychopathology are amenable to treatment.

3. The Board has not received information that Dr. McRae has commenced psychiatric treatment.

(Record of Proceedings, 53.)

{¶ 11} The hearing examiner proposed the following "CONCLUSION OF LAW":

The acts, conduct, and/or omissions of Sharon Leilani McRae, M.D., as set forth in the Findings of Fact, individually and/or collectively constitute "[i]nability to practice according to acceptable and prevailing standards of care by reason of mental illness or physical illness, including, but not limited to, physical deterioration that adversely affects cognitive, motor, or perceptive skills," as that clause is used in Section 4731.22(B)(19), Ohio Revised Code.

(Record of Proceedings, 54.)

{¶ 12} Then the hearing examiner set forth a "Rationale for Proposed Order":

This is a close case, as the finding of impairment ultimately relies upon the diagnosis of "psychotic disorder." Dr. McRae's experts were persuasive in their testimony about Dr. McRae not falling within that diagnosis, but rather suffering from exhaustion and dehydration while reacting to a very stressful situation. Dr. Noffsinger, however, was also a credible and persuasive expert and his report and testimony support that conclusion that the extraordinary events of early January 2012 [sic] are beyond the case of someone who just needed a square meal and good night's sleep. While those factors might well explain the first MetroHealth stay, the second one occurred after Dr. McRae had had a chance to regroup. The Hearing Examiner further finds Dr. Noffsinger's outpatient treatment recommendation appropriate, as this indeed seems to be an episodic disorder that is amenable to treatment and hopefully will not disrupt Dr. McRae's life again.

(Record of Proceedings, 54.)  The hearing examiner recommended the Board indefinitely suspend appellant's certificate to practice medicine and surgery in Ohio.

{¶ 13} Appellant filed objections to the hearing examiner's report and recommendation.  The Board incorporated the examiner's report into its order with certain modifications.  The Board corrected the date of the hospital admission in the examiner's first finding of fact to state January 2011 instead of January 2012.[2]  The Board amended the second finding of fact to include "all expert opinions," and stated:

> By letter dated June 6, 2012, from Stephen G. Noffsinger, M.D., the Board was notified that following the Board-ordered evaluation conducted on or about April 18, 2012, Dr. McRae was determined to be have [sic] the diagnoses of Anxiety Disorder, Not Otherwise Specified, and Psychotic Disorder, Not Otherwise Specified, resulting in an inability to practice according to acceptable and prevailing standards of care.  Dr. Noffsinger further determined that Dr. McRae's mental disorders and other psychopathology are amenable to treatment.
>
> In her defense, Dr. McRae presented the testimony of two psychiatrists:  Samuel L. Bradshaw Jr., M.D., and William S. Logan, M.D.  Dr. Bradshaw is a board-certified psychiatrist who served as the Chief of Psychiatry at the Comery-O'Neil VA Medical Center for 20 years.  Dr. Bradshaw testified that, after reviewing records and examining Dr. McRae, he saw no evidence that Dr. McRae suffers from a mental disturbance.  Dr. Bradshaw further opined that Dr. McRae does not have any psychiatric disorder that affects her medical practice.
>
> Dr. Logan is board-certified in psychiatry and forensic psychiatry and has performed many physician evaluations for the medical boards of Kansas and Missouri. Dr. Logan reviewed Dr. McRae's records and examined her.  He opined that in January 2011 Dr. McRae had probably suffered from dehydration, an electrolyte imbalance, and sleep deprivation. Dr. Logan noted that the diagnosis at the time was either an acute stress reaction or brief reactive psychosis, but opined that there were actually no symptoms of psychosis.  Dr. Logan further opined that Dr. McRae did not suffer from anxiety disorder.

---

[2] The examiner's report incorrectly refers to January 2012 instead of January 2011 in other places not mentioned by the Board.

(Record of Proceedings, 90.) Instead of suspending appellant's certification, the Board placed her on probation subject to various terms for a period of at least two years.

{¶ 14} Appellant filed an appeal from the Board's order with the Franklin County Court of Common Pleas ("common pleas court"). The court affirmed the Board's order.

## II. ASSIGNMENTS OF ERROR

{¶ 15} Appellant appeals and presents this court with three assignments of error for our review:

> First Assignment of Error
>
> The Decision by the Court of Common Pleas Judge affirming the State Medical Board of Ohio's Order was an abuse of discretion because the Judge mischaracterizes or misinterprets the nature of Appellant's arguments; failing to address the crucial arguments advanced for why the Board's Order was unsupported by reliable, probative and substantial evidence
>
> Second Assignment of Error
>
> The Decision by the Court of Common Pleas Judge affirming the State Medical Board of Ohio's Order was an abuse of discretion because the Judge unreasonably and improperly mischaracterizes the evidence in a manner that unfairly places Dr. McRae's credibility in a negative light.
>
> Third Assignment of Error
>
> Dr. McRae was denied due process by the Board because she did not receive a fair and impartial hearing.

## III. STANDARD OF REVIEW

{¶ 16} " 'In an administrative appeal pursuant to R.C. 119.12, the [common pleas] court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence, and is in accordance with the law.' " *Levine v. State Med. Bd. of Ohio*, 10th Dist. No. 10AP-962, 2011-Ohio-3653, ¶ 12, quoting *Schechter v. Ohio State Med. Bd.*, 10th Dist. No. 04AP-1115, 2005-Ohio-4062, ¶ 55. According to the Supreme Court of Ohio:

> (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a

> reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

(Footnotes deleted.)  *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 17} The common pleas court's " 'review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." ' "  *Akron v. Ohio Dept. of Ins.*, 10th Dist. No. 13AP-473, 2014-Ohio-96, ¶ 19, quoting *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955).  The court "must give due deference to the administrative determination of conflicting testimony, including the resolution of credibility conflicts."  *ATS Inst. of Tech. v. Ohio Bd. of Nursing*, 10th Dist. No. 12AP-385, 2012-Ohio-6030, ¶ 29, citing *Crumpler v. State Bd. of Edn.*, 71 Ohio App.3d 526, 528 (10th Dist.1991).  The court must defer to the agency's findings of fact unless they are " 'internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable.' "  *Kimbro v. Ohio Dept. of Adm. Servs.*, 10th Dist. No. 12AP-1053, 2013-Ohio-2519, ¶ 7, quoting *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).  However, the common pleas court reviews legal questions de novo.  *Akron* at ¶ 19, citing *Ohio Historical Soc.* at 471.

{¶ 18} Our review is more limited than that of the common pleas court.  *Smith v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-234, 2012-Ohio-4423, ¶ 13.  "In reviewing the court of common pleas' determination that the [B]oard's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion."  *Id.*, citing *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680 (10th Dist.1992).  "An abuse of discretion occurs when a decision is unconscionable, unreasonable, or arbitrary."  *Weiss v. State Med. Bd. of Ohio*, 1oth Dist. No. 13AP-281, 2013-Ohio-4215, ¶ 15, citing *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, ¶ 25.  On the question of

whether the Board's order was in accordance with the law, our review is plenary.  *Id.*, citing *Univ. Hosp., Univ. of Cincinnati College of Med. v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992).

## IV.  DISCUSSION

{¶ 19} Under the first assignment of error, appellant contends the common pleas court abused its discretion because it mischaracterized or misinterpreted several of her arguments as to how the evidence does not support the Board's order and thus failed to adequately address her concerns.

{¶ 20} According to appellant, at the common pleas level she complained the hearing examiner only made three findings of fact nearly identical to statements in the pre-hearing notice of summary suspension.[3]  She also argued the "rationale" section of the hearing examiner's report, which the Board adopted, was vague and failed to properly discuss or account for evidence.  Appellant claimed this was not a close case as she presented substantial evidence she did not have a mental illness, including testimony from two experts.  She also argued the hearing examiner misunderstood or ignored her evidence regarding her second MetroHealth admission.  Specifically, she complained the hearing examiner thought she blamed this admission on dehydration and exhaustion when she did not.  Instead, appellant testified she initially agreed to the admission to avoid being reported to the Board.  Her evidence suggested any symptoms she exhibited during the admission were due to stress, caused, in part, by the unjustified change from a voluntary to involuntary admission.  Thus, she argued the hearing examiner's rationale was flawed and failed to articulate a valid reason for rejecting her experts' opinions.

{¶ 21} We do not believe the hearing examiner misunderstood or disregarded appellant's evidence regarding the second admission.  The hearing examiner stated "[a]ll exhibits and the transcript, even if not specifically mentioned, were thoroughly reviewed and considered by the Hearing Examiner prior to preparing this Report and Recommendation."  (Record of Proceedings, 31.)  True, the hearing examiner's rationale does not recite all of appellant's evidence concerning the second MetroHealth admission.  Nonetheless, it is apparent the examiner and Board found appellant and her experts failed

---

[3] Under the first assignment of error, appellant also discusses her arguments about the level of deference the examiner gave to the notice and the level of deference or bias the Board had toward Dr. Noffsinger.  We will address those issues in the context of her due process arguments in the third assignment of error.

to provide a more persuasive explanation for the "extraordinary events" of January 2011 than Dr. Noffsinger.  (Record of Proceedings, 54.)  Thus, the critical aspect of the Board's order is its reliance on Dr. Noffsinger's opinion that appellant was unable to practice due to mental illness.  The common pleas court correctly focused on whether this opinion constituted reliable, probative, and substantial evidence.

{¶ 22} Appellant contends the common pleas court abused its discretion when it found Dr. Noffsinger's opinion constituted reliable, probative, and substantial evidence. Appellant argues she proved Dr. Noffsinger "ignored completely or failed to give proper weight to critical evidence" and made improper inferences.  (Appellant's brief, 30.)  She claims the common pleas court again misinterpreted or mischaracterized her arguments.

{¶ 23} Regarding Dr. Noffsinger's psychopathology opinion, appellant claims the court erroneously stated she "asserted that had Dr. Noffsinger reviewed her letters of recommendation and * * * credentialing letters, his opinions would have changed." (R. 31, Decision and Entry, 10.)  Appellant claims this was not her argument.  She did not assert the letters would have changed Dr. Noffsinger's opinion, but, rather, complained he erred by not at least considering the letters before rendering an opinion.  She also complained Dr. Noffsinger formed his opinion based on complaints from her patients and co-workers and assumed the complaints were true without investigation.  In addition, appellant takes issue with the common pleas court's statement that her psychopathology arguments were a "moot point" as Dr. Noffsinger testified the psychotic disorder alone made her unable to practice.  (Decision and Entry, 10.)  Appellant argues her alleged psychopathology and psychosis are interrelated.

{¶ 24} Appellant did not provide a citation to the administrative record to support her interrelationship argument.  In any event, the common pleas court logically inferred appellant would only complain about Dr. Noffsinger's failure to consider letters if they would have impacted his opinion.  As the court observed, there was no testimony Dr. Noffsinger violated the standard of care for a forensic psychiatrist by considering the complaints but not the letters, and he reasonably suggested it was unlikely multiple people made completely unjustified complaints about appellant under different circumstances.

{¶ 25} With regard to the anxiety disorder diagnosis, appellant maintains she correctly argued Dr. Noffsinger based this diagnosis on her alleged self-report of being a "somewhat high strung person who talked rapidly, and at times, loudly" and her July 2010 admission to Deaconess. (Appellant's brief, 35.) She argued it was improper to base a diagnosis on a single hospitalization and a vague self-description she did not recall giving. Appellant complains the common pleas court mistakenly indicated Dr. Noffsinger's diagnosis relied on medical records from sources in addition to Deaconess. She takes issue with the court's suggestion that her anxiety disorder arguments were moot for the same reason the court found her psychopathology arguments were. But, again, appellant cites nothing in the record to support her claim about the interrelationship of Dr. Noffsinger's diagnoses. Even if the court incorrectly suggested Dr. Noffsinger relied on more records than he did, the common pleas court correctly observed the fact that appellant and her experts interpret the evidence differently than Dr. Noffsinger does not prove his diagnosis rested on improper inferences or was otherwise unsupportable.

{¶ 26} Next, appellant contends the common pleas court failed to address her arguments about the episodic psychotic disorder diagnosis. At the common pleas level, she complained Dr. Noffsinger improperly opined she exhibited the beginnings of psychotic symptoms between December 28, 2010 and January 2, 2011. He assumed her complaints about the dysfunction of the Lake West emergency department evidenced delusional thinking even though he admitted her version of events could be true. Appellant also complains Dr. Noffsinger relied heavily on the MetroHealth records to formulate the psychotic disorder diagnosis. But her experts testified those records contained unsupported conclusions, and one of her experts testified if she did have an episodic mental illness triggered by stress, he would anticipate more evidence of it than an isolated episode.

{¶ 27} The common pleas court correctly found appellant failed to show the diagnosis rested on improper inferences or was otherwise unsupportable. Dr. Noffsinger testified even if appellant's complaints about the emergency department were true, it would not change his diagnosis. The Board did not err in relying on Dr. Noffsinger's opinion simply because appellant's experts disagreed with his interpretation of the medical records. There were conflicting expert opinions, and the common pleas court

properly deferred to the Board's resolution of the battle of the experts. The fact that appellant had two expert witnesses does not mean she is entitled to prevail. As the lower court noted, "the quantity of the evidence does not always equate to quality." (Decision and Entry, 15.)

{¶ 28} For the foregoing reasons, we overrule the first assignment of error.

{¶ 29} Under her second assignment of error, appellant contends the common pleas court abused its discretion because it mischaracterized evidence in a way that placed her credibility in a negative light.

{¶ 30} In its decision, the common pleas court made the following statements:

> The simple assertion that the evidence was "overwhelming" against the Board's decision is nothing more than an assertion that the evidence had to be viewed through the Appellant's prism. Furthermore, the quantity of the evidence does not always equate to quality. The Hearing Officer had the best opportunity to review the credibility of the experts and the Appellant. During the hearing the Hearing Officer heard the following from or about the Appellant:
>
> 1) The Appellant had 4 pages of notes contesting Dr. Noffsinger's report;
>
> 2) Lied about recording Dr. Noffsinger during her interview;
>
> 3) Denied the histories taken by the other doctors when not beneficial to her;
>
> 4) When read the histories from the various providers she would respond "You read it correctly, but the information is incorrect."
> 5) Denys doctors being present when the records show that same doctors had notes;
>
> 6) Only bad things happen after she complained;
>
> 7) Claimed that her old Cincinnati employer falsified letters;
>
> 8) Complaints concerning her conduct always come after she complains about others;
>
> 9) Everyone else was there to make money - asserting that she was only one looking out for the patients; and,

> 10) The reason she felt she was before the Board was because she threatened to sue her prior employer;
>
> The Hearing Officer had the opportunity to hear the evidence and judge the Appellant's credibility. This Court has not been presented with any evidence that would require it to interpose its judgment for that of the Hearing Officer or Board.

(Decision and Entry, 15.)

{¶ 31} Appellant argues the common pleas court improperly "presented a justification for the hearing examiner to doubt [her] credibility and not accept her version of the facts" when the hearing examiner's report and Board's order did not discuss the issue at all. (Appellant's brief, 49.) She contends, "[t]he purpose of the [common pleas court's] review on appeal was to determine if the Board's Order was supported, not to create justifications for the Order," and by creating the list set forth above, appellant argues the court "supplanted the judgment of the Hearing Officer." (Appellant's brief, 49; Reply brief, 10.) Appellant complains the court incorrectly suggested she "was fabricating or embellishing her testimony." (Appellant's brief, 41.) Specifically, she complains eight of the ten items on the court's list "do not fit the evidence" and unfairly reflect on her credibility. (Appellant's brief, 49.)

{¶ 32} Appellant misconstrues the common pleas court's decision. The court suggests that, to the extent the hearing examiner and Board implicitly found appellant lacked credibility, such a finding was supported by the evidence and possible inferences that could be drawn from the evidence. The fact that appellant offered contrary evidence on issues the court mentions, and disagrees with the fairness or breadth of certain inferences the court listed, does not render the decision unreasonable, arbitrary or unconscionable. The court's primary point—that evidence exists that would support a finding that appellant lacked credibility—is accurate. For instance, even though appellant testified about inaccuracies in her medical records, as Dr. Noffsinger explained, those contemporaneous accounts of events made by people with no discernable reason to lie were likely more accurate than the recollections appellant had of those same events over a year later during a proceeding that could affect her ability to practice medicine.

{¶ 33} Accordingly, we overrule the second assignment of error.

{¶ 34} Under her third assignment of error, appellant contends the Board's decision was not in accordance with law because the Board violated her due process rights when it failed to provide her with a fair and impartial hearing.

{¶ 35} "Both the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution require that administrative proceedings comport with due process." *Richmond v. Ohio Bd. of Nursing*, 10th Dist. No. 12AP-328, 2013-Ohio-110, ¶ 10, citing *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Doyle v. Ohio Bur. of Motor Vehicles*, 51 Ohio St.3d 46 (1990). "Pursuant to due process, governmental agencies must provide constitutionally adequate procedures before depriving individuals of their protected liberty or property interests." *Natoli v. Ohio State Dental Bd.*, 177 Ohio App.3d 645, 2008-Ohio-4068, ¶ 18 (10th Dist.), citing *Mathews* at 332, and *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 541 (1985). Appellant has a protected property interest in her certificate to practice medicine and surgery. *See Natoli* at ¶ 19, citing *Haj-Hamed v. State Med. Bd.*, 10th Dist. No. 06AP-351, 2007-Ohio-2521, ¶ 53.

{¶ 36} A " 'fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." ' " *Natoli* at ¶ 18, quoting *Mathews* at 333, quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). "At its core, due process insists upon fundamental fairness, and the requirement to conduct a hearing implies that a fair hearing must occur." *Id.*, citing *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 24 (1981), citing *Clayman v. State Med. Bd. of Ohio*, 133 Ohio App.3d 122, 127 (10th Dist.1999). But, above all, " ' "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." ' " *Id.*, quoting *Mathews* at 334, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The question of whether the due process requirements have been satisfied presents a legal question we review de novo. *See Slorp v. Dept. of Adm. Servs.*, 10th Dist. No. 97APE08-1136 (Apr. 30, 1998); *Judd v. Meszaroz*, 10th Dist. No. 10AP-1189, 2011-Ohio-4983, ¶ 19 ("Purely legal questions are subject to de novo review.").

{¶ 37} Appellant argues she was denied a fair hearing because the hearing examiner excluded from evidence the curriculum vitae ("CV") and report of her third psychiatric expert, Gilbert R. Parks, M.D. At the hearing, Dr. Noffsinger testified without objection regarding his concerns about Dr. Parks' credentials and report. Then, instead of

having Dr. Parks testify, appellant tried to testify about what Dr. Parks said about her mental status. The state objected because Dr. Parks "was not presented as an expert," and the state had no opportunity for cross-examination. (Tr. Vol. II, 685.) In response, appellant asked the common pleas court to admit Dr. Parks' CV and expert report into evidence. She argued the documents were relevant and credible evidence, and the fact Dr. Parks did not testify went to the weight of the evidence, not admissibility. Appellant also argued it was fair to admit the documents because Dr. Noffsinger already criticized Dr. Parks' report. The state again objected. The hearing examiner stated: "I understand what you're saying, weight as opposed to admissibility. And normally I'd be amenable to that. But given the fact that we have two other expert opinions already in the record, I think given that, I'd defer to the State on this objection." (Tr. Vol. II, 686.) Appellant proffered Dr. Parks' CV and report for the record.

{¶ 38} According to appellant, the fact that she already presented evidence from two other experts "should have no bearing on the admissibility of Dr. Parks' CV and report." (Appellant's brief, 53.) "Cumulative or not of other testimony, once Dr. Noffsinger criticized Dr. Parks' report, it was unreasonable to not allow the [r]eport in as evidence." (Appellant's brief, 55.) Appellant argues Dr. Parks' opinions are relevant and Dr. Noffsinger's testimony "opened the door" for their admission. (Appellant's brief, 54.) Appellant complains she was prejudiced by the exclusion of the report and CV because the only evidence the Board had to "weigh the opinions and credibility" of Dr. Parks was Dr. Noffsinger's testimony. (Appellant's brief, 54.) Additionally, appellant complains she had the right to "not be pressured to call witnesses or present evidence because the [state] presented testimony criticizing a [r]eport not in evidence." (Appellant's brief, 55.)

{¶ 39} Appellant did not object to Dr. Noffsinger's testimony about Dr. Parks. And after the hearing examiner excluded Dr. Parks' CV and report from evidence, appellant did not ask the examiner to strike Dr. Noffsinger's testimony about Dr. Parks from the record. Also, appellant's objections to the hearing examiner's report and recommendations make no mention of Dr. Parks or his CV and report. Nonetheless, the common pleas court rejected appellant's due process argument with no mention of a plain error standard of review. And like the common pleas court, we find no due process violation occurred here. Appellant cites to no authority for her position that the exclusion

of Dr. Parks' CV and report denied her a fair hearing. While the Ohio Rules of Evidence are not controlling in these circumstances, the hearing examiner and Board could have considered those rules and excluded the report and CV as inadmissible hearsay. Ohio Adm.Code 4731-13-25(A); *see* Evid.R. 801. Moreover, we are not persuaded appellant suffered any prejudice from the evidentiary exclusion. Appellant does not contest the hearing examiner's suggestion that the report was cumulative of other admitted evidence, and we fail to see how Dr. Noffsinger's criticism of a report not in evidence was relevant, let alone prejudicial, particularly when the hearing examiner and Board made no mention of Dr. Parks in their decisions.

{¶ 40} Next, appellant complains the Board placed her on probation "based upon the same information it had prior to Dr. McRae's hearing and without giving due regard to all the evidence presented by Dr. McRae in her defense at the hearing." (Appellant's brief, 51.) Appellant suggests the hearing was a "mere formality." (Appellant's brief, 56.) Because the hearing examiner's findings of fact were nearly identical to statements in the notice of summary suspension, she argues the hearing examiner disregarded her evidence and simply deferred to or "rubber-stamped" the Board's pre-hearing position.

{¶ 41} Appellant also argues the Board improperly deferred to or was biased toward Dr. Noffsinger's opinion. She points to Dr. Noffsinger's testimony that he was an agent of the Board in this matter. She also contends the arguments in the Board's briefs for the common pleas court and this court demonstrate the Board's bias, and, because the Board did not provide an in-depth analysis on why it found Dr. Noffsinger's opinion more persuasive than her experts' opinions, appellant insinuates the Board ignored her evidence about the flaws in Dr. Noffsinger's opinion. She complains her experts' "combined credentials and experience are far greater than Dr. Noffsinger's." (Appellant's brief, 62.)

{¶ 42} However, "a presumption of honesty and integrity on the part of an administrative body exists, absent a showing to the contrary." *Bharmota v. State Med. Bd. of Ohio*, 10th Dist. No. 93AP-630 (Dec. 7, 1993), citing *Ohio State Bd. of Pharmacy v. Poppe*, 48 Ohio App.3d 222, 229 (12th Dist.1988). The fact that the hearing examiner's findings of fact mirrored language in the suspension notice does not prove the examiner disregarded appellant's evidence and merely "rubber-stamped" the Board's pre-hearing

opinion.  The hearing examiner's lengthy summary of the evidence suggests otherwise.  Moreover, the Board's changes to the findings of fact and decision to put appellant on probation instead of suspending her, as the hearing examiner recommended, suggest the Board did not simply ignore appellant's evidence either.  Though Dr. Noffsinger testified he was an agent of the Board, he indicated his role was to be fair, impartial, and consider all relevant facts in evidence.  Appellant cannot demonstrate bias simply because the Board accepted Dr. Noffsinger's opinion.  Nor does the brevity of the Board's analysis prove bias.   Additionally, we will disregard appellant's argument that statements in the Board's appellate briefs prove bias as "arguments of counsel are not evidence."  *State ex rel. Richards v. United Parcel Serv.*, 10th Dist. No. 02AP-533, 2003-Ohio-415, ¶ 7.

{¶ 43} Because appellant received a fair, impartial hearing, no due process violation occurred.  Accordingly, we overrule the third assignment of error.

## V.  CONCLUSION

{¶ 44} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and DORRIAN, J., concur.