[Cite as *M.M. v. State Med. Bd. of Ohio*, 2020-Ohio-360.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [M. M.], M.D., | : | |
| Appellant-Appellant, | : | |
| v. | : | No. 18AP-839 |
| | | (C.P.C. No. 18CV-5813) |
| State Medical Board of Ohio, | : | |
| | | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on February 4, 2020

**On brief:** *Dinsmore & Shohl LLP,* and *Elizabeth Y. Collis,* for appellant. **Argued:** *Elizabeth Y. Collis.*

**On brief:** [*Dave Yost*], Attorney General, and *Emily A. Pelphrey,* for appellee. **Argued:** *Emily A. Pelphrey.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Appellant-appellant, M.M., M.D., appeals from an appellate decision and judgment of the Franklin County Court of Common Pleas entered on October 18, 2018, affirming the June 27, 2018 order of appellee-appellee, State Medical Board of Ohio ("the board"), that placed permanent limitations and restrictions on appellant's license to practice in the State of Ohio. Because we find the common pleas court did not abuse its discretion, we affirm its decision.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On October 18, 2018, the Franklin County Court of Common Pleas affirmed the board's June 27, 2018 order ("the order") that permanently limits and restricts appellant's license such that her "medical practice shall not involve direct patient care in an inpatient setting." (Order at 1, attached to July 10, 2018 Notice of Appeal.) The board

issued its order pursuant to R.C. 4731.22(B)(19)[1] after finding appellant presently incapable of practicing medicine according to acceptable and prevailing standards of care due to her diagnosis of schizoaffective disorder, bipolar type, and behavioral issues that led to her being terminated from her residency program in October 2017.

{¶ 3}    The facts of this matter are generally undisputed. The record establishes that appellant was diagnosed with bipolar I disorder in March 2011, while she was in medical school. She was treated with mood stabilizing and antipsychotic medications.  On discharge from treatment, appellant completed an outpatient program and then received ongoing treatment in an outpatient setting until April 28, 2014.

{¶ 4}    In 2014, appellant graduated from medical school and moved to Cleveland for a 36-month residency with The MetroHealth System ("MetroHealth").  She began seeing Thomas Thysseril, M.D., for her psychiatric care.  At her initial evaluation in 2014, Dr. Thysseril noted that appellant had attempted suicide twice and had been hospitalized twice.  Dr. Thysseril diagnosed appellant with bipolar I disorder, depressed mild, and

---

[1] R.C. 4731.22(B)(19) states in pertinent part as follows:

> (B) The board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend a license * * * for one or more of the following reasons:
>
> * * *
>
> (19) Inability to practice according to acceptable and prevailing standards of care by reason of mental illness or physical illness, including, but not limited to, physical deterioration that adversely affects cognitive, motor, or perceptive skills.
>
> * * * If the board finds an individual unable to practice because of the reasons set forth in this division, the board shall require the individual to submit to care, counseling, or treatment by physicians approved or designated by the board, as a condition for initial, continued, reinstated, or renewed authority to practice. An individual affected under this division shall be afforded an opportunity to demonstrate to the board the ability to resume practice in compliance with acceptable and prevailing standards under the provisions of the individual's license or certificate. For the purpose of this division, any individual who applies for or receives a license or certificate to practice under this chapter accepts the privilege of practicing in this state and, by so doing, shall be deemed to have given consent to submit to a mental or physical examination when directed to do so in writing by the board, and to have waived all objections to the admissibility of testimony or examination reports that constitute a privileged communication.

relational problems. The record indicates that Dr. Thysseril still was treating appellant as of the time of the underlying proceedings.

{¶ 5} In 2015, appellant disclosed her mental illness on her training certificate application. The board ordered her to submit to a psychiatric evaluation by Stephen Noffsinger, M.D., a board-certified psychiatrist. At that time, Dr. Noffsinger diagnosed appellant with bipolar I disorder, most recent episode depressed, in full remission. Dr. Noffsinger opined that appellant was incapable of practicing medicine according to acceptable and prevailing standards of care, but opined further that appellant's diagnosis was amenable to treatment. Consequently, on June 10, 2015, appellant entered into a Consent Agreement that placed appellant's training certificate on probation, which included continuing psychiatric treatment, monitoring by a physician at appellant's place of employment, and interviews with the board for a minimum of three years. It is undisputed that appellant fully complied with the Consent Agreement.

{¶ 6} By letter dated October 3, 2017, appellant was notified that she was being terminated from her residency program at MetroHealth effective October 6, 2017, 34 months into her 36-month residency program. The termination letter detailed appellant's ongoing performance, behavior, and patient care issues. The letter recounted that appellant had been placed on administrative leave on May 25, 2017 due to a number of incidents and observations by management that brought into question appellant's ability to perform her essential functions as a family medicine resident in a manner that was professional and safe for herself, her patients, and colleagues. The letter referenced several recent incidents, including appellant's verbal outbursts toward co-workers, accusations that co-workers had targeted and attacked her, yelling and crying during meetings, her failure to listen to co-workers and consider relevant patient information, and a physical reaction to a posted scheduling board that lead to a physical altercation with a co-worker.

{¶ 7} The October 3, 2017 termination letter also noted an assessment that appellant's treating psychiatrist had provided on or about July 27, 2017. The termination letter included the following:

> Unfortunately, your provider's assessment does not provide assurance that you will be able to immediately and consistently perform such essential functions as appropriate and respectful communication and interpersonal interactions with team members, appropriate and safe reactions to and problem

> resolution regarding workplace issues, and effective leadership attendant to being a senior resident. Your provider concluded that you may be able to perform in a "low-stress outpatient setting" or administrative setting, but he explained that you are expected to have continued behavioral issues and reactions during periods of high work stress and intensity. * * *

(Hearing Examiner's Report and Recommendation at ¶ 16.)

{¶ 8} Thereafter, by letter dated October 31, 2017, MetroHealth informed the board that it had "reason to believe that a violation of [R.C.] 4731.22(B)(19) has occurred" regarding appellant due to her behavior from May 19-24, 2017. (Hearing Examiner's Report and Recommendation at ¶ 17.)

{¶ 9} Based on the report from MetroHealth, the board sent appellant a certified letter notifying her it had reason to believe she was in violation of R.C. 4731.22(B)(19) and ordering her to submit to another psychiatric evaluation by Dr. Noffsinger. Appellant was evaluated by Dr. Noffsinger on November 1, 2017.

{¶ 10} In a report dated January 16, 2018, Dr. Noffsinger notified the board that, as a result of the evaluation, he diagnosed appellant with schizoaffective disorder, bipolar type. Dr. Noffsinger opined that appellant's condition rendered her incapable of practicing medicine according to acceptable and prevailing standards of care. He further opined that appellant's practice should be limited to a low-stress administrative type of practice in which she would not engage in direct patient care, in either an inpatient or outpatient setting.

{¶ 11} On February 14, 2018, the board issued a Notice of Summary Suspension and Opportunity of Hearing ("the notice") advising appellant that it had reason to believe she was in violation of R.C. 4731.22(B)(19). By letter dated February 16, 2018, appellant requested a hearing on the allegations contained in the notice.

{¶ 12} An administrative hearing was held before a board-appointed hearing examiner on April 17-18, 2019. The evidence in the record before us includes numerous documents in addition to the testimony of witnesses and evidence admitted at the administrative hearing.

{¶ 13} Appellant appeared at the hearing with counsel and presented evidence and testimony. In addition to testifying herself, she called two witnesses to testify on her behalf: Thomas Thysseril, M.D., her treating psychiatrist since 2014; and Sheng Liu, M.D., her

academic advisor at MetroHealth. Appellant also stipulated to the authenticity and admissibility of the board's exhibits.

{¶ 14} Three witnesses were called to testify on behalf of the board. First, Stephen Noffsinger, M.D., the board-certified psychiatrist who evaluated appellant in 2015 and 2017 at the board's request, testified as to his psychiatric evaluations of appellant and his opinions as to appellant's ability to practice medicine. Second, Leanne Chrisman-Khawam, M.D. (hereafter referred to as "Dr. Chrisman"), currently an assistant professor and the director of the Transformative Care Continuum at Ohio University Heritage College of Osteopathic Medicine in Warrensville Heights, Ohio, who had been appellant's monitoring physician at MetroHealth, testified as to her observations of, and experiences with, appellant at MetroHealth. Third, Annette Jones, M.D., a compliance officer for the board, testified as to her involvement with appellant's performance under the Consent Agreement appellant entered into in 2015 and communications with or concerning appellant.

{¶ 15} On April 26, 2018, the hearing examiner issued a 31-page report and recommendation that found the evidence adduced at the hearing established that appellant suffered from an "[i]nability to practice according to acceptable and prevailing standards of care by reason of mental illness or physical illness, including, but not limited to, physical deterioration that adversely affects cognitive, motor, or perceptive skills," as set forth in R.C. 4731.22(B)(19). (Hearing Examiner's Report and Recommendation at 25.) The hearing examiner recommended that appellant's certificate to practice medicine and surgery be permanently limited and restricted so that she would not be involved with direct patient care, either inpatient or outpatient. The hearing examiner also recommended that appellant be placed on probation for at least 2 years. Finally, the hearing examiner recommended that appellant's certificate be fully restored upon successful completion of probation, but permanently limited and restricted to bar direct patient care.

{¶ 16} The board considered the Report and Recommendation at its June 13, 2018 meeting, at which time it heard from both appellant and the board. After reviewing the evidence, the board issued its order on June 27, 2018. The draft minutes of the board meeting indicate discussion among the board members regarding the testimonial and documentary evidence adduced at the hearing. A physician member of the board observed that "the board takes action based on behavior, not diagnosis," and that appellant's

"behavior is controllable with additional treatment and additional consideration given to her practicing environment." (June 13, 2018 Board Minutes Excerpt.) The board member proposed modifying the hearing officer's recommended sanction, to allow appellant's practice to include direct patient care in an outpatient setting. Following discussion, seven members of the board voted to amend the hearing examiner's proposed order to, among other things, limit appellant from practicing in an inpatient setting, and to suspend appellant's license until two board-certified psychiatrists recommend that she is able to safely and competently practice medicine in an outpatient and/or administrative setting. Seven members of the board then voted to approve the hearing examiner's Findings of Fact, Conclusions of Law, and Proposed Order, as amended. The amended order suspends appellant's license for an indefinite period of time. The order contains six conditions for reinstatement or restoration of appellant's license, all of which appellant must meet before the board will consider reinstating or restoring her license. The order further provides that, upon reinstatement or restoration, appellant's license will be subject to specified probationary terms, conditions, and limitations for a period of at least three years. The order states that, upon successful completion of probation, appellant's certificate will be fully restored, but permanently limited and restricted so as to "not involve direct patient care in an inpatient setting." (Order at 1.)

{¶ 17} Appellant appealed the board's order to the common pleas court pursuant to R.C. 119.12. The parties briefed the matter, after which the common pleas court issued a decision and entry affirming the board's order, finding that the order is supported by reliable, probative, and substantial evidence and is in accordance with law, pursuant to R.C. 119.12. The trial court concluded its decision with the following observation:

> Though Appellant disagreed with the severity of the sanction, [she] did not and could not contest the **legitimacy** of the sanction. The restriction imposed is one legally authorized and within the Board's authority. This Court does not have the ability to change a sanction if – as in this case – the sanction is supported by reliable, probative and substantial evidence.

(Emphasis sic.) (June 27, 2018 Decision and Entry at 8.)

{¶ 18} Appellant now appeals the common pleas court's decision.

## II. ASSIGNMENT OF ERRORS

{¶ 19} Appellant presents for our review a single assignment of error:

> The Franklin County Court of Common Pleas erred by affirming the Findings, Order and Journal Entry dated June 27, 2018 (the "Order") of the State Medical Board of Ohio (the "Board").

{¶ 20} Appellant argues that the common pleas court abused its discretion when it affirmed the board's order because the board's decision is not supported by reliable, probative, and substantial evidence and is not in accordance with law for three reasons: (1) "there is no evidence that [appellant's] impairment is permanent," (2) "the [b]oard relied on testimony from an expert who based his opinion on incomplete information and gave inconsistent testimony," and (3) the board "is applying its enforcement duties in an arbitrary manner." (Appellant's Brief at v-vi, 1.)

## III. LAW AND DISCUSSION

### A. Standard of Review

{¶ 21} An appeal from an administrative agency is governed by R.C. 119.12, which states in pertinent part as follows:

> The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

Under this provision, "a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Evidence for purposes of R.C. 119.12 is reliable, probative, and substantial when it "is dependable; that is, it can be confidently trusted," is "relevant in determining the issue," and has "some weight; it must have importance and value." *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 22} This Court has previously addressed the common pleas court's role in reviewing the administrative record. In *Glasstetter v. Rehab Servs. Comm.*, 10th Dist. No. 13AP-932, 2014-Ohio-3014, ¶ 14, we held:

> The common pleas court's " 'review of the administrative record is neither a trial de novo nor an appeal on questions of

> law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." ' " *Akron v. Ohio Dept. of Ins.*, 10th Dist. No. 13AP-473, 2014-Ohio-96, ¶ 19, 9 N.E.3d 371, quoting *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207, 2 Ohio B. 223, 441 N.E.2d 584 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280, 131 N.E.2d 390 (1955). The court "must give due deference to the administrative determination of conflicting testimony, including the resolution of credibility conflicts." *ATS Inst. of Technology v. Ohio Bd. of Nursing*, 10th Dist. No. 12AP-385, 2012-Ohio-6030, ¶ 29, 985 N.E.2d 198, citing *Crumpler v. State Bd. of Edn.*, 71 Ohio App.3d 526, 528, 594 N.E.2d 1071 (10th Dist.1991). The court must defer to the agency's findings of fact unless they are " 'internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable.' " *Kimbro v. Ohio Dept. of Adm. Servs.*, 10th Dist. No. 12AP-1053, 2013-Ohio-2519, ¶ 7, quoting *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471, 1993 Ohio 182, 613 N.E.2d 591 (1993). However, the common pleas court reviews legal questions de novo. *Akron* at ¶ 19, citing *Ohio Historical Soc.* at 471.

{¶ 23} Our role in reviewing the common pleas court's appellate review of an administrative appeal is limited to determining if the common pleas court abused its discretion. *Smith v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-234, 2012-Ohio-4423, ¶ 13, citing *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680 (10th Dist.1992). An abuse of discretion occurs when a trial court's discretionary judgment is unreasonable, arbitrary, or unconscionable. *State ex rel. McCann v. Del. Cty. Bd. of Elections*, 155 Ohio St.3d 14, 2018-Ohio-3342, ¶ 12; *State v. Meek*, 10th Dist. No. 16AP-549, 2017-Ohio-9258, ¶ 23. Even under an abuse of discretion standard, however, "no court has the authority, within its discretion, to commit an error of law." (Quotations and citations omitted.) *Shaw v. Underwood*, 10th Dist. No. 16AP-605, 2017-Ohio-845, ¶ 25; *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7. In other words, " '[a] court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts.' " *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 49, (O'Donnell, J., dissenting), quoting *Doe v. Natl. Bd. of Med. Examiners*, 199 F.3d 146, 154 (3d Cir.1999). Absent an abuse of discretion on the part of the common pleas court, this Court may not substitute its judgment for that of the board or the common pleas

court.  *Pons* at 621, citing *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260-61 (1988).

{¶ **24**}  The common pleas court found the board's order to be supported by reliable, probative, and substantial evidence and in accordance with law, as required by the governing statute, R.C. 4731.22(B)(19).  This Court has de novo review of questions of law.  *Gross v. Ohio State Med. Bd.*, 10th Dist. No. 08AP-437, 2008-Ohio-6826, ¶ 16, citing *Chirila v. Ohio State Chiropractic Bd.*, 145 Ohio App.3d 589, 592 (10th Dist.2001), citing *Steinfels v. Ohio Dept. of Commerce, Div. of Secs.*, 129 Ohio App.3d 800, 803 (10th Dist.1998), *appeal not allowed,* 84 Ohio St.3d 1488. *See also Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992); *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 501 (10th Dist.2003). Thus, when reviewing this appeal of a common pleas court's appellate review of a state administrative order, this Court uses the same standard as the common pleas court in determining whether the board's order is in accordance with law.  Our legal review, therefore, is independent and without deference to the common pleas court's determination.

## B. Assignment of Error

{¶ **25**} The board argues the record contains reliable, probative, and substantial evidence to support its order finding appellant in violation of R.C. 4731.22(B)(19).  After giving full consideration to appellant's case at its June 13, 2018 meeting, the board adopted the hearing examiner's report but modified the recommended sanction.   The board determined  the evidence before it established that appellant suffered from an "[i]nability to practice according to acceptable and prevailing standards of care by reason of mental illness or physical illness, including, but not limited to, physical deterioration that adversely affects cognitive, motor, or perceptive skills," as set forth in R.C. 4731.22(B)(19). Accordingly, the board issued an order that permanently limited and restricted appellant's license in a manner consistent with the authority vested in the board under R.C. 4731.22(B)(19).  *See generally* June 13, 2018 Board Minutes Excerpt.

{¶ **26**} On appeal, the common pleas court upheld the board's order, finding that it was supported by reliable, probative, and substantial evidence in the record and was in accordance with law.

{¶ 27} Appellant challenges the common pleas court's decision for the following reasons:

> There is no evidence in the record to support a finding that [appellant] is permanently impaired such that her medical license should be subject to a permanent limitation or restriction. The Board relied on expert testimony that was based on incomplete information and was internally inconsistent. The Board applied its enforcement duties in an arbitrary manner.
>
> Accordingly, the Board issued an Order that is unsupported by reliable, probative, and substantial evidence and is not is accordance with law. Therefore, the Franklin County Court of Common Please abused its discretion and erred in affirming the Board's Order, and the Board's Order should be vacated, and this case should be remanded to the Board with instructions to remove the permanent practice restriction and to impose a sanction consistent with the evidence in this case.

(Appellant's Brief at 1-2.)

{¶ 28} We disagree with appellant's argument. First, nothing in R.C. 4731.22 requires the board to make a factual finding or to show evidence that an impairment could be permanent before it imposes a sanction under division (B)(19). Moreover, we find the record contains reliable, probative, and substantial evidence that appellant's impairment is permanent. Dr. Noffsinger testified at the hearing that appellant's schizoaffective sisorder renders her incapable of practicing medicine according to acceptable and prevailing standards of care, for multiple reasons. He stated that appellant has a history of being so ill due to her disorder that she becomes impaired and is unable to practice medicine, and that she has required various psychiatric medications over the course of years in order to either treat her active symptoms of her illness, or to prevent a relapse of her symptoms. He observed that, despite ongoing treatment, appellant "has experienced recurrent episodes of paranoia as evidenced by those 2016 and 2017 events that substantially impacted her judgment, her behavior, her capacity to recognize reality, and to professionally interact with patients, peers and supervisors." (Hearing Tr. at 61.)

{¶ 29} Dr. Noffsinger also testified that, in his opinion, appellant's disorder is amenable to treatment. He did not, however, opine that appellant's disorder can be cured. To the contrary, Dr. Noffsinger testified as follows:

> The schizoaffective disorder is a chronic relapsing disorder, and, * * * *given her history of multiple episodes of depression, mania, and freestanding paranoia, it's likely to reoccur, and when it does occur it can be disabling, it can make her unable to practice.*
>
> So for that reason she requires treatment with medications in order to prevent a reoccurrence of her disabling symptoms.
>
> At least my interpretation of the Board rules indicates that under Rule 4731.2801, this term "inability to practice" includes an inability to practice in accordance with such standards without appropriate treatment, monitoring, or supervision.
>
> And, in fact, she does indeed require medication treatment for the symptoms of her schizoaffective disorder. So because she needs medication treatment to sustain her ability to practice, she is, by definition, unable to practice.

(Emphasis added.) (Hearing Tr. at 60-62.) Dr. Noffsinger's testimony provides reliable, probative, and substantial evidence that appellant's disorder, or impairment, is permanent.

{¶ 30} Second, appellant argues that the board erred in relying on Dr. Noffsinger's testimony because he based his opinion on incomplete information and gave inconsistent testimony. Dr. Noffsinger acknowledged on cross-examination that he had not spoken with appellant's current monitoring physician, her academic advisor, or her treating psychiatrist before forming his opinion. Nonetheless, his testimony as to the information he relied on in connection with both evaluations he conducted of appellant prior to forming his opinion regarding appellant's disorder is highly credible. He testified that, based on the information he was provided in connection with his 2015 psychiatric evaluation of appellant, he diagnosed appellant with bipolar I disorder, most recent episode depressed, in full remission. He defined dipolar I disorder as requiring at least one manic episode which results in either a hospitalization or significant social or occupational dysfunction and can be treated successfully with medication. Dr. Noffsinger also testified that, in talking with appellant in connection with the 2017 evaluation, he found her version of events different from the documentation he set forth in his report to the board. He opined that appellant did not have "especially good insight" into her condition. (Hearing Tr. at 67.) Dr. Noffsinger further testified that his 2017 evaluation of appellant found new evidence of paranoia and offered as examples several episodes of appellant's behavior at MetroHealth,

including her allegations that staff were harming, even killing, patients to retaliate against her.

{¶ 31} Additionally, Dr. Noffsinger testified about records received from Dr. Thysseril stating that, "when [appellant's] stress level becomes high, she may become verbally aggressive and uncooperative." (Hearing Tr. at 48.) Dr. Noffsinger stated that "this is where [Dr. Thysseril is] recommending that [appellant] not practice in a high stress inpatient environment." (Hearing Tr. at 48-49.) Dr. Noffsinger noted updated records from Dr. Thysseril changed appellant's diagnosis to bipolar I disorder mixed with paranoia mild. Dr. Noffsinger testified that, even though Dr. Thysseril and he agree about appellant's bipolar I disorder diagnosis and her paranoia, they disagree about the nomenclature. He explained:

> [T]here's no such thing as Bipolar I disorder with paranoia. That's why I changed my diagnosis to schizoaffective disorder, which I think more accurately incorporates the paranoia into the diagnosis. But regardless, we even have Dr. Thysseril embracing the paranoia as part of the diagnosis.

(Hearing Tr. at 49.)

{¶ 32} Dr. Noffsinger further explained that he had changed appellant's diagnosis because, "with the multiple reports of [appellant's] paranoia by multiple people, that did not occur in the context of a manic or depressive episode, * * * that * * * justified a change in diagnosis to schizoaffective disorder." (Hearing Tr. at 57-58.)

{¶ 33} Dr. Noffsinger also testified that he had concerns about Dr. Thysseril conducting a forensic evaluation of appellant. First, Dr. Thysseril is appellant's treating psychiatrist. Second, nothing in Dr. Thysseril's resume indicates that he is qualified to conduct the forensic psychiatric evaluation required here. Dr. Noffsinger explained as follows:

> This is a forensic evaluation. This is a psychiatric evaluation occurring in a legal context, so by definition it's a forensic evaluation that requires specific methodology and training in order to know how to conduct the forensic evaluation appropriately.
>
> * * *
>
> [Dr. Thysseril's] resume does not describe his doing a forensic psychiatry fellowship and does not describe Board certification

> either in psychiatry or forensic psychiatry. So based on his resume, I would say no, he's not been trained or certified to conduct forensic evaluations.

(Hearing Tr. at 65.)

{¶ 34} Dr. Noffsinger also testified that Dr. Thysseril, in conducting his own examination, appeared to have reviewed Dr. Noffsinger's report "but he does not describe reading any of the other documents such as the MetroHealth program documents from Dr. Chrisman or Dr. Zack, Dr. Alexander, or any of [appellant's] past records." (Hearing Tr. at 65.) Finally, Dr. Noffsinger testified that he disagreed "with [Dr. Thysseril's] methodology, his diagnosis, his qualifications, and his conclusions." (Hearing Tr. at 66.)

{¶ 35} The record demonstrates that appellant's assertion that the board's reliance on Dr. Noffsinger's expert testimony is unfounded. The board is the trier of fact in this matter and, as such, determines the credibility and reliability of expert witnesses. The board's determination is entitled to a measure of deference. *McRae v. State Med. Bd. of Ohio*, 10th Dist. No. 13AP-526, 2014-Ohio-667. The board asserts that its acceptance of Dr. Noffsinger's opinion is "entitled to a strong measure of deference and cannot be overturned here simply because [appellant] disagrees." (Appellee's Brief at 19-20.) We agree.

{¶ 36} Third, appellant alleges that the board applied its enforcement duties in an arbitrary manner. We do not find this allegation persuasive. The board found appellant in violation of R.C. 4731.22(B)(19), which authorizes the board to impose a range of sanctions. As we have discussed, it is well-established law that a reviewing court cannot modify a sanction authorized by statute if the board order imposing the sanction is supported by reliable, probative, and substantial evidence and is in accordance with law. *Henry's Café, Inc. v. Ohio Bd. of Liquor Control*, 170 Ohio St. 223 (1959).

{¶ 37} The sole issue before this Court is whether, on consideration of the record, the order is supported by reliable, probative, and substantial evidence and is in accordance with law. We find the board had reliable, probative, and substantial evidence for placing permanent restriction on appellant's license under R.C. 4731.22(B)(19). Therefore, the court of common pleas committed no error in upholding the board's order and appellant's assignment of error is overruled.

## IV. CONCLUSION

{¶ 38} Having independently reviewed the record, we find that the common pleas court did not abuse its discretion on appellate review when it affirmed the board's order permanently restricting appellant's license to practice in Ohio. Accordingly, we overrule appellant's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and NELSON, JJ., concur.