[Cite as *Darr v. State Med. Bd. of Ohio*, 2023-Ohio-1723.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Richard B. Darr, M.D.,                                :

      Plaintiff-Appellant,                    :                    No. 22AP-498
                                                                                                (C.P.C. No. 21CV-7916)
v.                                                                  :

                                                                                        (REGULAR CALENDAR)
State Medical Board of Ohio,                   :

      Defendant-Appellee.                    :

---

D E C I S I O N

Rendered on May 23, 2023

---

**On brief:** *Lindhorst & Dreidame, Co., L.P.A, Michael F. Lyon*, and *Cullen P. Rooney*, for appellant. **Argued:** *Michael F. Lyon.*

**On brief:** *Dave Yost*, Attorney General, *Melinda R. Snyder*, *Kyle C. Wilcox*, and *Katherine J. Bockbrader*, for appellee. **Argued:** *Katherine J. Bockbrader.*

---

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Appellant, Richard B. Darr, M.D., appeals from a judgment of the Franklin County Court of Common Pleas, affirming a decision of appellee, State Medical Board of Ohio ("Board"), revoking appellant's license to practice medicine in the state of Ohio. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant testified he was first licensed to practice medicine in Utah in 1970 and became licensed in the state of Ohio in 1991. According to appellant, he initially practiced internal medicine in the university setting, but he transitioned to the private practice of geriatric medicine in 2000. From 2000 to 2018, appellant organized his practice

so he could see one-third of his patients in a hospital setting, one-third in his medical office, and the other one-third in the nursing home. In 2018, however, he lost his hospital privileges and was subsequently suspended by the Board in 2020. Appellant testified he is the only physician in his medical office and has several assistants, some of whom are family members. He also stated the average age of his patients is 86. Appellant maintained that he continues to work 80 hours per week as he has done so throughout his practice.

{¶ 3} In 2009, appellant was examined by Jerry Flexman, Ph.D., a clinical neuropsychologist, following a referral by a Springfield, Ohio hospital in which appellant had privileges. Dr. Flexman conducted neuropsychological testing of appellant and concluded appellant's condition could be described as a mild cognitive impairment. In Dr. Flexman's August 8, 2011 report, he stated: "The results of the current evaluation….[are] generally consistent with a general cognitive impairment, primarily in the nonverbal levels of information processing. Sequencing and speed of processing were areas showing significant difficulties. These results are consistent with a mild cognitive impairment." (State's Ex. 3 at 11.)

{¶ 4} Appellant disagreed with Dr. Flexman's evaluation and he sought a second opinion from Douglas Scharre, M.D., who is board certified in neurology, behavioral neurology, and neuropsychology. Dr. Scharre interviewed appellant and conducted some neurological testing. Dr. Scharre did not believe appellant suffered from any neurocognitive disorder or impairment. Rather, Dr. Scharre suspected appellant suffered from Attention-Deficit/Hyperactivity Disorder ("ADHD"). Appellant has continued to see Dr. Scharre since 2009.

{¶ 5} In 2016, the Board began fielding complaints concerning appellant's competency. At the Board hearing, Board Enforcement Attorney Cheryl Pokorny testified she reviewed these complaints and drafted a "synopsis of complaints," which was admitted into evidence as State's exhibit 11.[1] (Tr. Vol. II at 318.) According to Pokorny, one complaint received by the Board was from a local probate court judge before whom appellant had testified as an expert in competency and guardianship proceedings. According to the judge, appellant offered contradictory opinions on the issue of competency in the same case. The

---

[1] Admitted for the limited purpose of establishing information, the Board provided State's exhibit 11 to Stephen G. Noffsinger, M.D.

Board also fielded complaints from appellant's colleagues and co-workers alerting the Board to instances where appellant prescribed inconsistent care for patients. In one instance, appellant prescribed physical therapy for a patient for whom he had also prescribed hospice/palliative care, and in another, appellant prescribed testosterone to a patient who was being prescribed a testosterone antagonist for treatment of his prostate cancer.

{¶ 6} Other derogatory information received by the Board included a report that upon entering a nursing home, appellant was unable to remember his home address and had to check his driver's license for the information. It was also reported that appellant could not recall patients' names within a month of seeing them. In 2019, appellant forgot patient names when speaking with a Board representative even though he had been reminded of their names earlier in the conversation. One physician reportedly told the Board that appellant was "not firing on all cylinders." (Tr. Vol. II at 314.) Additionally, a hospital social worker reportedly informed the Board that appellant was commonly referred to as "Dr. Dementia." (Tr. Vol. II at 316.) Pokorny also told the Board that appellant voluntarily relinquished privileges at a local hospital in 2018 as a result of complaints. On cross-examination, Pokorny admitted the facts underlying the complaints she summarized in the synopsis have not been independently verified.

{¶ 7} On November 19, 2020, the Board notified appellant that it had reason to believe that he was impaired in his ability to practice medicine according to acceptable and prevailing standards of care due to mental or physical illness. The Board ordered appellant to attend an examination with Stephen G. Noffsinger, M.D., a board-certified forensic psychiatrist. Following an interview with appellant, Dr. Noffsinger submitted a report to the Board wherein he concluded that appellant is unable to practice according to acceptable and prevailing standards of care by reason of an unspecified neurocognitive disorder that adversely affects appellant's cognitive skills.

{¶ 8} On March 10, 2021, the Board issued a summary suspension of appellant's license to practice medicine, pursuant to R.C. 4731.22(G), due to an alleged "[i]nability to practice according to acceptable and prevailing standards of care by reason of mental illness or physical illness, including but not limited to, physical deterioration that adversely affects

cognitive, motor or perceptive skills." (State's Ex. 1a.) Appellant disputed the Board's determination of his competency and requested a hearing.

{¶ 9} On July 31, 2021, Scott Magnuson, Psy.D., interviewed appellant at the request of the Board. After conducting some neurological testing and reviewing other relevant information regarding appellant, Dr. Magnuson diagnosed appellant with mild neurocognitive disorder and issued a report. According to Dr. Magnuson, appellant is unable to practice according to acceptable and prevailing standards of care by reason of a neurocognitive disorder that adversely affects appellant's cognitive skills.

{¶ 10} A Board hearing examiner conducted a 3-day evidentiary hearing in October 2021. Appellant was 78 years old at the time of the Board hearing. The evidence presented at the hearing included the testimony of appellant, attorney Pokorny, and Dr. Noffsinger, Dr. Magnuson, Dr. Scharre, and Thomas Erickson, M.D., appellant's primary physican. The written reports submitted by Drs. Noffsinger and Magnuson were also admitted into evidence as well as the videotaped interview of appellant by Dr. Noffsinger.

{¶ 11} On November 12, 2021, the hearing examiner issued a 58-page report recommending permanent revocation of appellant's medical license. On December 8, 2021, the Board met to consider the matter. On that same date, the Board issued an order stating: "The license of Richard B. Darr, M.D., to practice medicine and surgery in the State of Ohio shall be PERMANENTLY REVOKED." (Emphasis sic.) (Dec. 8, 2021 Entry of Order at 1.)

{¶ 12} Appellant appealed the Board's decision to the court of common pleas, pursuant to R.C. 119.12. The trial court affirmed the Board's order on finding that it was supported by reliable, probative, and substantial evidence and in accordance with law.

{¶ 13} Appellant appealed to this court from the judgment of the trial court.

## II.  ASSIGNMENT OF ERROR

{¶ 14} Appellant assigns the following sole assignment of error for our review:

> The Court of Common Pleas abused its discretion in affirming the State Medical Board's Order since that Order was not supported by reliable, probative, and substantial evidence.

## III.  STANDARD OF REVIEW

{¶ 15} In an appeal from an order of the Board, a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. R.C. 119.12; *T.E. v. State Med. Bd. of Ohio*, 10th Dist. No. 21AP-142,

2022-Ohio-1471, ¶ 21, *appeal not accepted for review*, *T.E. v. State Med. Bd. of Ohio*, 167 Ohio St.3d 1499, 2022-Ohio-2953. " ' "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. "Substantial" evidence is evidence with some weight; it must have importance and value.' " *Demint v. State Med. Bd. of Ohio*, 10th Dist. No. 15AP-456, 2016-Ohio-3531, ¶ 11, quoting *Our Place*, *Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 16} "While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, *i.e.*, being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency [or, we note, misunderstanding of law]. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. Instead, the appellate court must affirm the trial court's judgment." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

## IV.  LEGAL ANALYSIS – ASSIGNMENT OF ERROR

{¶ 17} In appellant's sole assignment of error, he contends the trial court abused its discretion when it determined the administrative record contains reliable, probative, and substantial evidence in support of the Board's order permanently revoking his medical license. We disagree.

{¶ 18} "The Ohio Revised Code 'vests the Board with broad authority to regulate the medical profession in [Ohio], and to discipline any physician whose care constitutes "a departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established." ' " *Demint* at ¶ 11, quoting *Griffin v. State Med. Bd. of Ohio*, 10th Dist. No. 09AP-276, 2009-Ohio-4849, ¶ 3, quoting R.C. 4731.22(B)(6). R.C. 4731.22(B) requires the Board to revoke a physician's medical license under the following circumstances:

> [T]he board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, * * * revoke

> * * * [an individual's] certificate to practice * * * for one or more of the following reasons:
>
> (19) Inability to practice according to acceptable and prevailing standards of care by reason of mental illness or physical illness, including, but not limited to, physical deterioration that adversely affects cognitive, motor, or perceptive skills.

R.C. 4731.22(B)(19). *See also* Ohio Adm.Code 4731-28-01.

{¶ 19} Here, the trial rejected appellant's contention that the Board erroneously relied on the opinion testimonies of Drs. Magnuson and Noffsinger, while disregarding the opinion testimonies of Drs. Scharre and Erickson. In affirming the order of revocation, the trial court noted that "[t]he record shows that the Hearing Examiner and the Board weighed the credibility of the witnesses, made a determination as to their credibility, and explained the reasons for the determination." (June 14, 2022 Decision & Entry at 9.) We agree with the trial court.

{¶ 20} Dr. Scharre is board certified in neurology, behavioral neurology, and neuropsychology. He is a professor at The Ohio State University, with a clinical practice including research, and the diagnosis and treatment of Alzheimer's Disease, Lewy body dementia, frontotemporal disorders, mild cognitive disorders, and behavioral manifestations. Dr. Scharre described the field of neurology as the study of the brain, spinal cord, nerves, and muscles. According to Dr. Scharre, neuropsychiatric conditions may impact mood, behavior, cognition, language, executive skills, memory, attention, and focus.

{¶ 21} Appellant was first examined by Dr. Scharre in 2009, after appellant was referred to him for neurological testing by the "disruptive physician committee" of a local hospital. (Tr. Vol. III at 489.) Dr. Scharre had known appellant professionally for 20 years, as they had served on committees together. His impression of appellant was that he was a physician who held "strong rooted opinions about things, and typically he would be argumentative, I think, in terms of displaying his opinions." (Tr. Vol. III at 490.) Dr. Scharre also commented that appellant can be obstinate. Dr. Scharre undertook an assessment of potential deficits in appellant's attention, executive functioning, and memory. Dr. Scharre saw appellant 3 times in 2009 and conducted neurological testing including electroencephalopathy and cognitive skills assessments.

{¶ 22} Based on his interview of appellant and the neuropsychological testing, Dr. Scharre concluded there was no evidence appellant suffered either from a degenerative cognitive disorder or a progressive cognitive impairment. According to Dr. Scharre, appellant's "past medical history and childhood history * * * suggested mostly of Attention Deficit Disorder causing issues with attention, [and] some distractibility." (Tr. Vol. III at 493.)

{¶ 23} Dr. Scharre saw appellant again in 2014, 2016, and 2017. According to Dr. Scharre, appellant's office visit in 2016 was the result of a Board referral based on a reported incident involving appellant at a nursing home. In 2016, Dr. Scharre reviewed the 2009 neurological testing performed by Dr. Flexman and acknowledged the test results showed appellant had difficulties with visual spacial memory, attention, and speed processing. According to Dr. Scharre, appellant tested well on the multi-domain testing he performed in 2016. Dr. Scharre concluded that appellant did not suffer from a neurocognitive disorder and there is no evidence of any progression in the cognitive deficits he observed in 2009.

{¶ 24} Dr. Scharre saw appellant again in 2020 and most recently in February 2021. When asked his opinion about appellant's condition in 2021, he opined that "there was no progression of any cognitive issues, nor any evidence of degenerative or progressive cognitive disorder." (Tr. Vol. III at 512.)

{¶ 25} In connection with the Board's proceedings, appellant agreed to be seen by Dr. Magnuson in July 2021. Dr. Magnuson testified he "was asked to evaluate [appellant's] cognitive functioning as it pertains to his ability to practice medicine." (Tr. Vol. II at 202.)

{¶ 26} In order to assess appellant's cognitive abilities, Dr. Magnuson interviewed appellant, administered a battery of tests and submitted a report to the Board, which was admitted into evidence as State's exhibit 15. According to Dr. Magnuson, the purpose of the neurological testing is to "reflect [appellant's] brain functioning relative to other approximately 75- to 79-year-olds." (Tr. Vol. II at 230.) He added that "age-related cognitive decline is normal and to be expected." (Tr. Vol. II at 230.) In his report, Dr. Magnuson stated that appellant "demonstrated a decline in cognitive functioning on certain measures of executive functioning, working memory, attention, and memory[, and]

[h]is performances on these measures ranged from low average to exceptionally low (16th percentile to 1st percentile)." (State's Ex. 15 at 6.)

{¶ 27} Dr. Magnuson explained that on the Wisconsin Card-Sorting Test, a test designed to assess executive functioning, appellant scored at the very bottom of his age group. *See* State's Ex. 15. Dr. Magnuson added that "I specifically chose this test because I think this is -- it's very translatable in terms of what a physician does and how they apply the scientific method." (Tr. Vol. II at 221.) The results of the Ray Complex Figure Test, which tests delayed recall by asking the subject to recall shapes after a short period of time, showed appellant scored in the 27th percentile when compared to others in his age group.

{¶ 28} Dr. Magnuson reported to the Board that the test results reveal deficits in appellant's capacity for learning new information, which could affect his ability to conduct a clinical interview, integrate new information, generate and alter hypotheses, and multitask. Dr. Magnuson diagnosed appellant with "Mild Cognitive Disorder." (State's Ex. 15 at 6.) In the report, Dr. Magnuson opined that appellant "is presently not capable of practicing medicine according to acceptable and prevailing standards of care due to the fact that he has a mild neurocognitive disorder." (State's Ex. 15 at 6.) Similarly, Dr. Scharre was unable to establish the etiology of appellant's neurological disorder, and he added that such disorders "remain relatively stable, but they generally do not improve." (State's Ex. 15 at 6.)

{¶ 29} Dr. Noffsinger is a forensic psychiatrist who is board certified in psychiatry and forensic psychiatry by the American Board of Psychiatry and Neurology. He currently has a psychiatry practice, consults for two state psychiatric hospitals, and serves as a professor of psychiatry at the University Hospitals of Cleveland, among other positions. Dr. Noffsinger testified he is on the faculty where he teaches a course of law and psychiatry at the Case Western Reserve School of Law and the University of Akron School of Law.

{¶ 30} Dr. Noffsinger explained that "[f]orensic psychiatry is a subspecialty within psychiatry which includes the evaluation of psychiatric matters in a legal context." (Tr. Vol. I at 20-21.) He testified he has conducted mental impairment evaluations for the Board for more than 20 years. Dr. Noffsinger estimated that he performs 5 or 6 such evaluations annually, and he has found no impairment in approximately 1 out of 3 cases.

{¶ 31} According to Dr. Noffsinger, the Board asked him to answer the following three questions relative to appellant's competency:

These come straight out of the Revised Code, so whether there was any evidence that the physician has a mental disorder or other psychopathology. That's the first question.

Second question is: If the answer to the first question is yes, then whether the physician is able to practice medicine according to acceptable and prevailing standards of care, and if any condition should be placed upon their practice.

And the third question is, getting back to the first question: If the answer is in the affirmative, whether the disorder is treatable and a plan of treatment would recommend based on the physician's treatment needs.

(Tr. Vol. I at 31-32.)

{¶ 32} Dr. Noffsinger evaluated appellant on December 12, 2020. He conducted a one-hour virtual interview of appellant, reviewed appellant's medical records, and considered the complaints received by the Board. Dr. Noffsinger acknowledged he has not investigated the facts underlying the specific complaints made to the Board. The videotape of the interview was admitted at the hearing as State's exhibit 4. In his report to the Board, Dr. Noffsinger opined that appellant suffers from an unspecified neurocognitive disorder that renders appellant incapable of practicing medicine according to acceptable and prevailing standards of care. Dr. Noffsinger further opined that appellant's cognitive deficiencies would impair his ability to conduct thorough and accurate patient interviews and physical examinations, limit his ability to integrate information from these evaluations to form accurate diagnoses and appropriate treatment plans, and reasonably and reliably interact with other healthcare professionals. According to Dr. Noffsinger, appellant's disorder is progressive in nature and may be slowed by certain treatment but not cured. Dr. Noffsinger's report to the Board was admitted into evidence as State's exhibit 3.

{¶ 33} At the hearing, Dr. Noffsinger testified that after reviewing the neuropsychological testing performed by Dr. Magnuson, he amended his diagnosis from unspecified neurocognitive disorder to mild neurocognitive disorder, which is further along the spectrum of cognitive disorders and is characterized by a greater degree of cognitive impairment. Dr. Noffsinger agreed with Dr. Scharre that appellant's cognitive impairment is not the result of dementia, but he disagreed as to the extent of the impairment. He also disagreed with the diagnosis of ADHD.  Dr. Noffsinger believed that Dr. Scharre

misdiagnosed appellant because he discounted the results of the neurological testing performed by Dr. Flexman in 2009 and by Dr. Magnuson in July 2021.

{¶ 34} The Board also heard the testimony of Dr. Erickson. Dr. Erickson has diagnosed appellant with hypertension, high cholesterol, and adult-onset diabetes mellitus. Dr. Erickson inherited many of appellant's patients when appellant was suspended in March 2021. Dr. Erickson issued a report on February 12, 2021. His report provides in relevant part as follows:

> He is a 78 y.o. male with a life long history of being absent minded and having symptoms of attention deficit disorder. He was always a bit hyperactive and had some attentional issues from childhood. He was never diagnosed with ADD/ADHD in the past. There is no evidence of a progressive cognitive disorder.

(State's Ex. 2 at 1.)

{¶ 35} Dr. Erickson testified he did not believe appellant suffered from ADHD as diagnosed by Dr. Scharre, but he did describe appellant as "eccentric." (Tr. Vol. III at 551.)

{¶ 36} Appellant testified extensively at the hearing. On cross-examination, appellant told the hearing examiner he has been unable to figure out why the Board initiated proceedings to revoke his medical license. When asked about the reason a local hospital had questions about his competency in 2009, appellant went on, what can be fairly described as a long-winded and largely non-responsive rant, about the lack of medical ethics and the poor quality of medical care fostered by corporate management systems in the hospital setting. Our review of appellant's hearing testimony and his interview with Dr. Noffsinger reveals that appellant frequently answered relatively straight forward questions in this same fashion.

{¶ 37} Appellant strongly disagreed with the medical opinions of Drs. Noffsinger and Magnuson regarding his competency. Appellant also disagreed with several observations made by Dr. Scharre in his medical records. For example, appellant disagreed with Dr. Scharre's comments in his 2009 progress notes that appellant "does have some significant cognitive and neuropsychiatric symptoms," and he denied Dr. Scharre's assertion that "[h]e does forget patient names often * * *, is occasionally asking the same questions repeatedly, [and] that is slightly worse in the last 5 years." (State's Ex. 16 at 2.)

{¶ 38} Our review of the Board's minutes reveals that the Board members, particularly Dr. Michael Schottenstein, a psychiatrist, found the testimonies of Drs. Noffsinger and Magnuson to be more persuasive than the testimonies of Drs. Scharre and Erickson. With regard to the diagnosis of mild neurocognitive disorder, "Dr. Schottenstein opined that the diagnosis is non-controversial. Dr. Darr meets the criteria for the diagnosis and two autonomous Board experts independently came to the same conclusion." (Dec. 8, 2021, Board Meeting Minutes ("Meeting Minutes") at 4.)

{¶ 39} Dr. Schottenstein noted appellant's performance on many of the neurological tests administered by Dr. Magnuson "ranged from low average to exceptionally low." (Meeting Minutes at 4.) Dr. Schottenstein stated that appellant's "neuropsychological assessments substantially corroborate the nature of the complaints the Board has received over a period of years regarding his behavior." (Meeting Minutes at 4.) He also explained why he was not impressed by the testing performed by Dr. Scharre:

> [T]hose tests are not good tools to screen or evaluate for changes over time for mild neurocognitive disorder. The way to make the distinction between mild neurocognitive disorder and normal age-related cognitive decline is with neuropsychological testing; if the testing shows cognitive decline that is substantially more severe than one would expect for one's age and level of education, then that is compelling.

(Meeting Minutes at 5.)

{¶ 40} Dr. Schottenstein concluded that "[c]ombined with the history of concerning behavior and Dr. Darr's own presentation, Dr. Schottenstein stated that he regrettably had no choice other than to support the Proposed Order to permanently revoke Dr. Darr's medical license." (Meeting Minutes at 5.)

{¶ 41} Several Board members, including Mr. Giacalone, Dr. Kakarala, and Dr. Feibel expressed the opinion that the video of appellant's interview with Dr. Noffsinger supported the conclusion that appellant is incapable of practicing medicine in accordance with acceptable and prevailing standards of care by reason of a mild neurocognitive disorder that adversely affects his cognitive skills. For example, Dr. Kakarala concluded that "the hearing transcript and the video of the interview with Dr. Noffsinger demonstrates that there is enough concern in a multitude of areas to support the permanent revocation of Dr. Darr's license." (Meeting Minutes at 7.) After viewing the interview with Dr. Noffsinger,

Dr. Feibel concluded that appellant "had been cognitively acute in parts of it, but there were other parts in which he was not." (Meeting Minutes at 6.) Mr. Giacalone acknowledged that he is not a physician, but upon reading the hearing transcript and viewing the video, "it was very apparent that Dr. Darr could not answer questions in a straight-forward manner and would go off on a tangent." (Meeting Minutes at 6.)

{¶ 42} Board members also noted the slow cadence of appellant's answers to questions and his inability to focus on the question at hand as evidence his brain is not functioning at the level required of a physician practicing medicine. Indeed, the hearing transcript reveals when asked during the interview about his hospital privileges, appellant went off on a tangent about the hospital's ethical structure and his philosophical beliefs about the practice of medicine.

{¶ 43} Appellant argues the weight of the evidence does not support the Board order in that he performed well on both the Folstein Mini-Mental Examination administered by Dr. Noffsinger, and certain cognitive tests performed by Dr. Scharre. However, a review of the evidence presented at the hearing shows appellant performed very poorly in relation to others in his age group on a number of other tests administered by Dr. Magnuson. Moreover, as Dr. Schottenstein noted in the Board minutes, the testing performed by Dr. Magnuson was germane to a determination of neurocognitive disorders whereas the tests performed by Drs. Scharre and Noffsinger were designed to detect dementia, a condition which all of the experts agree is not present in appellant's case.

{¶ 44} Appellant next contends there was no evidence presented to support a finding that his alleged cognitive impairment is progressive in nature. In support of this argument, appellant relies on testimonies of Drs. Scharre and Erickson who opined that they have observed no progression in appellant's cognitive deficits over the years appellant has been their patient. Dr. Schottenstein, however, expressed skepticism about this testimony given the fact that both of these physicians had a long-term relationship with appellant that would have made it more difficult to objectively report cognitive decline. Moreover, the evidence establishes the diagnosis of mild neurocognitive disorder made by Drs. Noffsinger and Magnuson is further along the spectrum of cognitive impairment than the diagnosis of mild cognitive impairment made by Dr. Flexman in 2009.

{¶ 45} Here, all seven voting Board members voted to adopt the hearing officer's recommendation and permanently revoke appellant's license to practice medicine. There was no dissent.

{¶ 46} The Board minutes reflect the Board members sincere belief that the case was a close one and appellant bears no fault for his condition. Indeed, Dr. Feibel commented that appellant's case was the most difficult case he has reviewed since being on the Board. Yet, after reviewing the evidence, Dr. Feibel concurred with the recommendation of the hearing officer.

{¶ 47} The issue for this court on appeal is not whether the testimonies of Drs. Scharre and Erickson is more credible or more persuasive than testimonies of Drs. Magnuson and Noffsinger. Rather, our standard of review in this appeal requires a determination whether the trial court abused its discretion in finding that the testimonies of Drs. Magnuson and Noffsinger constitutes reliable, probative, and substantial evidence in support of the Board's order. We find no abuse of discretion in this case.

{¶ 48} There is no dispute in this case that Drs. Magnuson and Noffsinger were qualified to offer an expert opinion on appellant's competency. The opinion testimony of these two experts was relevant, consistent, and unequivocal on that critical issue.[2] The trial court concluded that the hearing officer and the Board considered the weight and credibility of the competing medical opinions offered by Drs. Scharre and Erickson and determined that the testimonies of Drs. Magnuson and Noffsinger was more persuasive. After carefully reviewing the record in this case, we cannot say the trial court abused its discretion in concluding that the expert opinion testimonies of Drs. Scharre and Noffsinger constituted reliable, probative, and substantial evidence in support of the Board's order.

{¶ 49} For the foregoing reasons, we hold that the trial court did not err in affirming the Board's order. Appellant's sole assignment of error is overruled.

---

[2] In *M. M. v. State Med. Bd. of Ohio*, 10th Dist. No. 18AP-839, 2020-Ohio-360, this court affirmed a Board decision limiting a medical license under R.C. 4731.22(B)(19), based primarily on the opinion testimony of Dr. Noffsinger. *See also Taylor v. State Med. Bd. of Ohio*, 10th Dist. No. 10AP-262, 2010-Ohio-5560, and *Flynn v. State Med. Bd. of Ohio*, 10th Dist. No. 16AP-29, 2016-Ohio-5903.

## V.  CONCLUSION

{¶ 50} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS and EDELSTEIN, JJ., concur.

————————————